Cynthia JOHNSON, Plaintiff,

v.

John Will WATERS, et al., Defendants.

Civ.A.No. 96-C-70-N.

United States District Court, M.D. Alabama, Northern Division.

April 22, 1997.

---

Melissa C. Bowen, Prattville, AL, for plaintiff.

Kendrick E. Webb, Mary E. Pilcher, Pamela Robinson Higgins, Webb & Eley, P.C., Montgomery, AL, for defendants.

1. Defendants question whether plaintiff alleges a race and gender discrimination claim under Section 1983. In the complaint, her race and gender discrimination claims are captioned "Title VII." The allegations state that plaintiff believes that defendants conduct toward her was "in violation of 42 U.S.C. Section 2000e et seq., 42

## MEMORANDUM OPINION AND ORDER

JOHN L. CARROLL, Chief United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Cynthia Johnson, commenced this action against John Will Waters, individually and in his official capacity as Probate Judge of Bullock County, Bullock County, the Bullock County Commission, and Pete Trussell, Randolph Hall, Dock McGowan, Alonzo Ellis and James Perry, individually and in their official capacity as members of the Bullock County Commission, alleging violations under Title VII of the Civil Rights Acts of 1964 and 1991, the First and Fourteenth Amendments of the United States Constitution as it is enforced under 42 U.S.C. § 1983, and state law claims for breach of contract and wrongful termination. Plaintiff, a black female, alleges that she was dismissed from her position as clerk in the Office of the Judge of Probate because of her race and gender, and because she did not support Waters during his bid for election as Bullock County Probate Judge.[1] Plaintiff seeks compensatory and punitive damages, and "such other, different and further relief as this Court deems proper."

Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and the individual defendants claim that they are entitled to qualified immunity. Defendant Waters further contends that he is immune from suit under the Eleventh Amendment of the United States Constitution. Defendants also moved for summary judgment on the same grounds. For the reasons stated below, the court finds that defendants' motions are due to be granted in part and denied in part.

### II. FACTUAL BACKGROUND

Plaintiff began working as a clerk in the Bullock County Office of the Probate in May,

U.S.C. Section 1983, and the Civil Rights Act of 1991." See Complaint ¶¶ 13 & 20. Therefore, for the sake of completeness, the court assumes that plaintiff's race and gender discrimination claims allege violations of Title VII and Section 1983.

1990. At that time Rufus Huffman was the probate judge. Huffman had been the probate judge since 1976. He served in that position until he lost his bid for re-election to defendant John Will Waters in November, 1994.

Under Alabama law, the probate judge of Bullock County has "the absolute right to hire one additional clerk" who shall "be employed by and serve at the pleasure of the probate judge."[2] Waters selected Johnny Williamson, a white male, to serve as the Chief Clerk of the Probate Office. Since the budget for the probate office provided for three clerks only, the selection of Mr. Williamson required the dismissal of one of the current clerks. In addition to plaintiff, there were two other clerks: Sally Cook, a white female, the current Chief Clerk who had worked in the Probate Office for approximately 13 years, and Edythe Thornton, a black female, a probationary employee since she had been with the office less than six months.

In his affidavit in support of his motion for summary judgment, defendant Waters states that he first determined that he would continue Cook's employment because he believed that she would be a "valuable asset" to his new office given her long term experience in the Probate Office. He then spoke with Cook about the other employees in the office. Waters states that based on the information that he received from Cook, other members of the County Commission Office, and a complaint letter from a local attorney regarding deficiencies in the Probate Office, he determined that plaintiff should be the employee that he let go.

On January 10, 1995, Waters wrote to plaintiff advising her of his decision to terminate her. The letter states:

> According to the Alabama Statutes, I have the right to hire my chief clerk upon entering office as Probate Judge. To do so, I must immediately replace one of the three clerks in the Probate office. In addition, I

have reliable information of your abusive criticism of myself as a County official.[3] This is, according to the County Personnel Manual, grounds for your dismissal. For these reasons and for the good of this county, I am hereby notifying you that you will be dismissed as a clerk in the Probate office upon my assuming the office of Probate Judge.

> You have certain rights as established by the County personnel policy. Among others, you have the right to answer these charges orally or in writing, and you may appeal your dismissal to the County Commission.

Letter from John W. Waters, Probate Judge–Elect to Cynthia Johnson, dated January 10, 1995.

On January 12, 1995, plaintiff sent a written request for a hearing to the Bullock County Commission. The County Commission granted plaintiff's request and held a hearing on February 15, 1995. Since defendant John C. Trussell was the County Commission Chair he presided over the hearing. He was assisted by the County Commission's attorney, Louis Rutland.[4] Plaintiff, Waters and Cook testified at the hearing. According to Trussell the only reason that the hearing was held was because plaintiff requested it but the County Commission had no intention of taking any action regarding plaintiff's termination.[5] In fact, the County Commission did not issue any findings or opinion following the hearing.

On April 26, 1995, plaintiff filed a complaint with the Equal Employment Opportunity Commission. Plaintiff alleged that she was fired from her position because of her race, gender and political affiliation. In reply to the notice of plaintiff's charge from the EEOC, defendant Waters advised the EEOC as follows:

> Ms. Johnson would have been replaced regardless of the hiring of any other persons in my office after I took office. There are only three employees in my office and

---

2. Public Law Act No. 86–488 (Apr. 30, 1986).

3. Prior to his election as Probate Judge, Waters served as Chair of the Bullock County Commission.

4. Deposition Testimony of John C. Trussell at 6.

5. Trussell Dep. at 9.

the governing body of Bullock County controls this by their allocation of funds. Ms. Johnson accused me of being dishonest and repeatedly called me a "crook" during my campaign for office. The Bullock County Commission gave Ms. Johnson a hearing concerning her discharge. At that hearing witnesses testified to the conduct of Ms. Johnson and it was found that she had committed offenses that constitute good cause for her termination. In summary, Ms. Johnson was replaced because of her animosity toward myself and her derogatory and slanderous statements during the election process. In an office with only three employees, all of whom handle funds and reflect the personality of the office and office holders, it is imperative that the Probate Judge be able to trust his employees without reservation.

Letter from John W. Waters, Judge of Probate, Bullock County to EEOC, dated June 8, 1995.

The EEOC issued plaintiff a right to sue letter on October 19, 1995. Plaintiff commenced this action on January 12, 1996.

### III. DISCUSSION

The court finds that best way the resolve the issues presented in the motions is to address defendants arguments as they relate to each set of defendants.

#### A. John Will Waters

Defendant Waters contends that plaintiff's complaint against him should be dismissed because she fails to state a claim. Additionally, Waters argues that he is immune from suit in his official capacity under the Eleventh Amendment to the United States Constitution and that he is entitled to qualified immunity for plaintiff's claims against him in his individual capacity. The court will consider these arguments in turn.

##### 1. Failure to State a Claim

To prevail on motion for summary judgment Waters must affirmatively negate an essential element of plaintiff's claim, or demonstrate that plaintiff's evidence is insuffi-

cient to establish an essential element of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989). Conversely, to survive a motion for summary judgment, plaintiff's initial burden is to present evidence demonstrating that she can establish the basic elements of her claim. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. In the context of an employment discrimination action, a plaintiff establishes the basic elements of her claim by presenting a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Additionally, since the ultimate element of proof in an employment discrimination action is whether defendants acted with discriminatory intent, *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–1482, 75 L.Ed.2d 403 (1983), a plaintiff also must present evidence that defendant's conduct was motivated by racial animus. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996). This burden is satisfied if the plaintiff introduces evidence that the employer's proffered reason for the challenged employment decision is not worthy of belief. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir.1994). Since this ultimate issue, whether defendants acted with discriminatory motive or intent, can be an "elusive factual question," and the court must avoid weighing conflicting evidence and making credibility determinations, summary judgment is generally inappropriate unless the inference of discrimination is totally lacking. *Hairston*, 9 F.3d at 921; *see also Batey v. Stone*, 24 F.3d 1330, 1335–1336 (11th Cir. 1994).

a) Race and Gender Discrimination Claims [6]

A plaintiff may establish a prima facie case of discrimination by relying on direct or circumstantial evidence. *Green v. School Bd. of*

---

**6.** Because the legal elements of a claim alleging disparate treatment discrimination under Title VII and Section 1983 are identical, separate discussion of each claim is not required. *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir.1985).

*Hillsborough Co., Florida,* 25 F.3d 974, 978 (11th Cir.1994); *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1539 (11th Cir.1988). Direct evidence is evidence which, if believed, proves the existence of a fact in issue without inference or presumption. *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1518 (11th Cir.1990) (*citing Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 n. 13 (11th Cir.1988)). Generally, direct evidence relates to the actions, statements or bias of the person making the challenged employment decision. *Trotter v. Board of Trustees of University of Alabama,* 91 F.3d 1449, 1453–1454 (11th Cir.1996). *See, e.g., Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990) (Hiring committee member's statement that a black person was needed for position was direct evidence of discrimination against plaintiff because of her Hispanic origin.); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984) (supervisor's statement that he did not want female plaintiff assigned to particular department because other women would then want to be assigned to department was direct evidence that supervisor imposed certain tasks on plaintiff because of her gender). If, however, the evidence presented is by inference subject to more than one possible meaning, it is not direct evidence and must be considered circumstantial evidence. *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1082–1083 n. 2 (11th Cir.1996).

To establish a prima facie case of discrimination based on circumstantial evidence plaintiff must show that she is a member of a protected class, was qualified for her job but was fired and replaced by a member outside her protected class. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). Alternatively, if the plaintiff is terminated for alleged misconduct, she may establish a prima facie case by demonstrating that employees outside the protected class engaged in similar conduct but were not discharged. *Id.*

Whether the plaintiff relies on direct or circumstantial evidence, the central inquiry for the court in evaluating whether plaintiff established a prima facie case of discrimination is whether the evidence presented creates a presumption that the employer unlawfully discriminated against her. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1123 (11th Cir.1993). *See also Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978). This presumption arises because the prima facie case eliminates the most common nondiscriminatory reasons for rejecting an applicant: lack of qualifications and lack of an available job. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977).

The manner in which plaintiff establishes a prima facie case, by direct or circumstantial evidence, also affects defendant's burden of proof to rebut plaintiff's prima facie case. If the plaintiff produces competent direct evidence of discriminatory intent, the defendant must prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory motive. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–1795, 104 L.Ed.2d 268 (1989); *Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir.1988). If the court finds that the evidence relied upon by plaintiff is circumstantial, the defendant employer's burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. This is merely a burden of production not persuasion. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982).

■ In the pending action, plaintiff contends that the evidence she presents, specifically the affidavit of E.O. Campbell, constitutes direct evidence of discrimination based on race and gender. In his affidavit, E.O. Campbell describes himself as a friend and acquaintance of defendant Waters. According to Campbell, Waters learned sometime during his campaign for probate judge that

plaintiff had referred to him as a crook. Campbell states that Waters told him that he believed plaintiff had obtained information that connected him with a voter fraud scheme wherein Waters paid for absentee ballots to be executed in favor of his chosen candidate. Campbell further avers that Waters discussed Johnson with him on several occasions referring to her as a "nigger bitch," and stating that he was going to fire her because of her knowledge of the voter fraud scheme and her ties to then probate judge Rufus Huffman.[7]

Defendants concede that the use of derogatory terms can be evidence of an animus, but argue that the use of the term, standing alone, is "not necessarily a direct showing of discrimination." Defendants argue that the alleged use of derogatory term must be viewed in its entirety including the "context and the nature in which such terms were utilized."

The court agrees with defendants that the context in which the derogatory reference was used should be considered. In this action, the derogatory reference used by Waters, which demeans plaintiff's race and gender, was used in the context of him expressing how he would exert his authority if became probate judge, he would terminate plaintiff. Standing alone, this comment is a direct showing of discrimination. The use of a racial slur by the employer, particularly when referring to the plaintiff specifically, constitutes direct evidence which is "highly probative evidence" of discrimination. *Wilson v. City of Aliceville*, 779 F.2d 631, 634 (11th Cir.1986); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir.1990) (comment by general manager that if company were his he would not hire blacks was direct evidence of discrimination since manager was responsible for hiring decisions). *See also Sennello v. Reserve Life Ins. Co.*,

872 F.2d 393 (11th Cir.1989); *Thompkins v. Morris Brown College*, 752 F.2d 558, 561, 563 and n. 11 (11th Cir.1985); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985).

Campbell's affidavit wherein he attests that Waters, the authority responsible for the decision to terminate plaintiff, used a derogatory racial and sexist term to refer to plaintiff, a potential employee of Waters, and that Waters further stated that he would terminate plaintiff, constitutes direct evidence of race and gender discrimination which satisfies plaintiff's initial burden of proof to survive summary judgment.[8] *Burns*, 908 F.2d at 1518. Therefore, since plaintiff has produced competent direct evidence of discriminatory intent based on race and gender, Waters must prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory motive. *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1794–1795. *See also McCarthney v. Griffin–Spalding County Bd. of Educ.*, 791 F.2d 1549, 1553 (11th Cir.1986). Waters can prevail on this issue at summary judgment, "only if the record evidence that [his] employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of fact but that [Waters] would have made the same employment decision even absent the discriminatory motive." *Burns*, 908 F.2d at 1519.

■ Waters contends that plaintiff was terminated because she was the least qualified of the existing probate clerks, had a poor attendance record, cashed personal checks in violation of office policy, submitted fraudulent time sheets, and performed her duties poorly. He also maintains that he had these concerns about plaintiff's work performance based on his "initial investigation" prior to

---

7. Affidavit of E.O. Campbell, filed December 5, 1996.

8. Since this matter is before the court on summary judgment, the only issue the court must resolve is whether the evidence is direct evidence. *See Sennello*, 872 F.2d at 395 ("Whether evidence is direct is an inquiry independent of whether it is accepted as true.") Whether direct evidence is credible is a determination to be

made by the trier of fact. *Thompkins*, 752 F.2d at 564. *See also Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 932 (11th Cir.1995) (On remand, the court must make full finding of facts whether direct evidence of discrimination along with all the other evidence indicates that discrimination played a substantial role in employment decision.)

terminating her. However, in his letter advising plaintiff of her termination, Waters only indicts plaintiff for her "abusive criticism" of him. He does not impeach her work performance. Since. Waters did not articulate any reason other than plaintiff's remarks about him at the time that he terminated her, he is precluded from relying on other reasons to satisfy his burden on rebuttal. *Lee,* 684 F.2d at 775. *See also Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1062 (11th Cir.1994).

Furthermore, Waters's contention that his decision to terminate plaintiff was based on concerns about her work performance is undercut by the fact that he did not raise those concerns at any other proceeding. At the hearing before the County Commission Waters stated that the reason he terminated plaintiff was because she said he was a crook.[9] Additionally, Cook testified in her deposition that the only matter that she was questioned about at the hearing was whether plaintiff made a statement that Waters was a crook.[10] Cook specifically denies that anyone at the hearing asked her about plaintiff's time sheets or cashing checks at the probate office.[11] Cook was not questioned on these matters although she had informed Waters shortly after his election well before the hearing that plaintiff often was late for work and cashed checks in the office.[12] Finally, although Waters states that he conducted a "formal investigation" of plaintiff after receiving notice of her EEOC charge, his response to the EEOC stated, "[i]n summary, plaintiff was replaced because of her animosity toward [him] and her derogatory and slanderous statements during the election process." Waters did not disclose any other concerns about plaintiff's work performance. Given Waters's failure to express the reasons that he now asserts warranted her termination at any time prior to defending this action, the court finds that there is a material question of fact whether he relied on these reasons at that time that he terminated plaintiff. *See Bell,* 715 F.2d at 1559 (employer's change in his position in administrative proceeding, EEOC response and judicial proceeding is a relevant consideration in evaluating sufficiency of proof on rebuttal). Waters fails to sufficiently rebut plaintiff's showing that the decision to terminate her was motivated by racial and gender animus.[13]

9. Deposition Testimony of Waters at 68.

10. Deposition Testimony of Cook at 31.

11. Cook Dep. at 31–32.

12. Cook Dep. at 11.

13. Waters argues vigorously that he should not be compelled to defend his decision to terminate plaintiff since she was not replaced by a white male, and therefore, cannot satisfy the fourth prong of a prima facie case under *McDonnell Douglas.* In this action, whether plaintiff was replaced by someone outside of her protected classes is a complex factual issue. The hiring of Williamson, a white male, required the replacement of one of the current clerks—one white female and two black females. However, whether the replacement employee was Williamson or one of the current clerks is an issue that this court does not need to resolve. The "replaced by an employee outside her protected class" prong of a prima facie case under *McDonnell Douglas,* is included as an element of a prima facie case based on circumstantial evidence because the company's hiring practices may reveal its underlying motivation or preferential treatment for nonminorities in the workplace. *Hawkins v. Ceco Corp.,* 883 F.2d 977, 982–982 (11th Cir. 1989), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990). Since this court finds that plaintiff presents direct evidence of Waters's discriminatory motive in terminating her, the fact that she may not benefit from the inference that could be drawn if she were replaced by someone outside her protected class is not detrimental.

Additionally, if an employee is terminated for misconduct, as Waters alleges in this action, plaintiff can establish a prima facie case of discrimination by demonstrating that members outside of her protected class engaged in similar conduct but were not terminated or that she was subjected to greater scrutiny. *Nix,* 738 F.2d at 1185. Waters admits that he did not ask Cook whether anyone else cashed checks in the probate office. Waters Dep. at 17, 19. Additionally, Cook admits that she also cashed check in the probate office when Huffman was the probate judge, Cook Dep. at 17, and that Huffman permitted cashing checks in the probate office. Cook Dep. at 14–15. Also, the deposition testimony of Sylvia Dismukes, the county administrator in charge of payroll, indicates that there were other employees who did not accurately report their work hours. See Dismukes Dep. at 13 ("We wondered if everybody was showing the amount of vacation time that they were taking for the simple fact that we would call and ask for different people, not only Cynthia [Johnson], but

Since plaintiff produces sufficient evidence to raise a triable issue of fact whether Waters intentionally discriminated against her because of her race and gender, defendant Waters's motions to dismiss and for summary judgment for failure to state a claim of race and gender discrimination in violation of Title VII and the equal protection clause as enforced under Section 1983, are due to be denied.

### b) Freedom of Speech Claim

■ In order to prevail on a claim alleging unlawful termination in retaliation for exercising one's right to freedom of speech, the plaintiff must show that the speech was constitutionally protected and was a "substantial motivating factor" in the employment decision. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Eiland v. City of Montgomery,* 797 F.2d 953, 955 (11th Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). In this action, it is beyond dispute that Waters's belief that plaintiff called him a crook and made disparaging remarks about his character was a substantial motivating factor in his decision to terminate plaintiff. Therefore, plaintiff satisfies her initial burden of proof by showing that the speech at issue is constitutionally protected. *See Ferrara v. Mills,* 781 F.2d 1508, 1512–1514 (11th Cir.1986).

The first issue that must be addressed to determine if the employee's speech is constitutionally protected is whether the speech involves a matter of public concern. *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–2897, 97 L.Ed.2d 315 (1987); *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539 (11th Cir.1994). If the employee's speech cannot be "fairly characterized as constituting speech on a matter of public concern," it is private speech and not entitled to First Amendment protection. *Connick v.*

*Myers,* 461 U.S. 138, 146–147, 103 S.Ct. 1684, 1689–1690, 75 L.Ed.2d 708 (1983); *Tindal,* 32 F.3d at 1539. If the challenged speech does address a matter of public concern the court must examine the content, form, and context of the employee's speech to determine whether the speech is constitutionally protected. *Connick,* 461 U.S. at 147–148, 103 S.Ct. at 1690–1691. The determination whether an employee's speech is constitutionally protected is a question of the law, and, therefore, is appropriate for resolution on summary judgment. *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); *Ferrara,* 781 F.2d at 1515. *See also Waters v. Chaffin,* 684 F.2d 833 n. 10 (11th Cir.1982).

The courts have consistently recognized statements that relate to actual or potential wrongdoing of a public official or to the character or integrity of a public official as involving matters of public concern. *See Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989); *Morales v. Stierheim,* 848 F.2d 1145 (11th Cir.1988), *cert. denied sub nom., Leon v. Avino,* 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989); *Eiland,* 797 F.2d at 956–957. Since Waters served as a public official previously charged with overseeing and managing the county coffers and was newly elected to perform judicial, fiscal and electoral duties,[14] referring to him as a crook questions his integrity and challenges his ability to serve as a public official. Accordingly, there is no question that the content of plaintiff's comment addressed a matter of public concern. However, whether the statement was of public relevance entitled to constitutional protection or related to matters unique to plaintiff as an employee requires the court to examine further the motive and purpose of the comment. *Morgan,* 6 F.3d at 754–755; *Goffer v. Marbury,* 956

---

different ones, and they wouldn't be there. But, yet, when the time sheets come in, it would show eight hours"). This evidence also creates a presumption of discrimination that is sufficient to shift the burden of rebuttal to Waters. *See NLRB v. Transportation Management Corp.,* 462 U.S. 393, 404–405, 103 S.Ct. 2469, 2475–2476, 76 L.Ed.2d 667 (1983) (an employer fails to satisfy its burden of demonstrating that the same employment decision would have been made absent

illegal motives if that decision is based or plaintiff employee's violation of rules or infractions that are commonly violated by other employees, or if it was never expressly communicated that plaintiff's conduct would result in being subjected to discipline or termination). As noted above, Waters fails to satisfy this burden.

**14.** See Alabama Code § 12–13–40 for enumeration of duties of probate judge.

F.2d 1045, 1049 (11th Cir.1992); *Deremo v. Watkins*, 939 F.2d 908, 910 (11th Cir.1991). *See also Connick*, 461 U.S. at 147, 103 S.Ct. at 1690 (protection of First Amendment is not applicable "when a public employee speaks not as citizen upon matters of public concern, but instead as an employee upon matters only of personal interest").

The parties agree that plaintiff's reference to Waters as a crook was not expressed in a public forum.[15] Plaintiff's representation that Cook said that plaintiff made the "crook statement" only one time, the morning after the election, however, may not be completely accurate. Other evidence does demonstrate that plaintiff's comments about Waters were limited to individual conversations with her co-worker, but shows that the comments were made more frequently than plaintiff admits.[16] It is undisputed, however, that plaintiff never shared her concerns about Waters with any authority empowered to investigate him, *see Fikes v. City of Daphne*, 79 F.3d 1079 (11th Cir.1996), or at a public forum, *Morales*, 848 F.2d at 1149, and that she never disclosed any actual or specific wrongdoing or breach of trust committed by Waters. *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690–1691. Given the manner, time, place

and, most important, motive of plaintiff's comments, the court finds that the challenged comments are no more than a personal statement of discontent and disgruntlement that Waters prevailed in the election and would become her supervisor.[17] Accordingly, the court finds that plaintiff fails to state a claim that she was terminated in violation of her first amendment right to exercise free speech. Defendant Waters is entitled to summary judgment on this claim.

#### c) Freedom of Association Claim

■ Plaintiff also alleges that she was terminated because Waters perceived her to be a supporter of his predecessor, Rufus Huffman. Plaintiff categorizes this claim as a freedom of association claim, that is, that she is protected from retaliation by her employer for her associational activities whether purely private or related to matters of public concern. See Plaintiff's Statement of Facts filed December 5, 1996 at II. B. To be clear, plaintiff does not contend that she was terminated because she engaged in political activity, particularly, supporting Huffman's candidacy.[18]

It is axiomatic that to state a claim alleging violation of one's right to freedom of

---

**15.** Plaintiff proffers this disclosure to support her claim that her interest in making the challenged comment outweighs Waters's interest in promoting the efficiency performance of the probate office's service. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–1735, 20 L.Ed.2d 811 (1968). However, the court addresses the issue, the *Pickering* balancing test, only if it determines that the challenged speech is constitutionally protected. *Eiland*, 797 F.2d 953, 956 n. 4; *Ferrara*, 781 F.2d at 1513–1514.

**16.** When Cook was asked whether plaintiff referred to Waters as a crook other than the one time the morning after the election, see Cook Dep. at 27, she responded:

> Well, she had made comments about, you know, that she didn't like the way that he [Waters] done and stuff like that. I mean, you know, she had made comments at different times. I don't remember exactly when or, you know, exactly what days or months or whatever. But she just always referred to him as being a crook.

Cook Dep. at 29.

Waters contends that another employee in the county commission office also told him that plaintiff said she could not work for him because he is a crook. Waters's Dep. at 13. Since there

is no evidence supporting this contention other than Waters's deposition testimony, this disclosure is relevant only to show that Waters believed that plaintiff made the statement.

**17.** While the court finds that plaintiff's comment was not expressed in a public forum, it does not conclude that plaintiff's speech was private and, therefore, precluded from consideration by her employer. *See Rankin v. McPherson*, 483 U.S. 378, 388 n. 13, 107 S.Ct. 2891, 2899 n. 13, 97 L.Ed.2d 315 (1987) ("a purely private statement on a matter of public concern will rarely, if ever, justify a discharge of a public employee"). Plaintiff did not. limit her comment about Waters to a private, one on one conversation but made the comment in a publicly accessible office. Under these circumstances, the court cannot deem her speech purely private. *Cf. Waters*, 684 F.2d at 839 (off duty police officer's "bellyaching" about supervisor which was communicated privately to one other off duty officers outside the jurisdiction of their department was deemed constitutionally protected since plaintiff officer had a reasonable expectation of privacy).

**18.** In her deposition testimony plaintiff denied that she assisted Huffman in his re-election campaign. Johnson Dep. at 29.

association, the plaintiff must demonstrate that she engaged in protected activity. While the court recognizes that for a freedom of association claim the purpose of the association, whether to advance political, social or purely private interests, is not relevant, the plaintiff must show that there was some activity in which she engaged that warrants constitutional protection. *Berry v. Bailey,* 726 F.2d 670, 673 (11th Cir.1984), *cert. denied,* 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985). *See, e.g., Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (membership in political organization); *Hatcher v. Board of Public Educ. & Orphanage for Bibb County,* 809 F.2d 1546 (11th Cir.1987) (attendance at protest rally). In this action, plaintiff rests her contention that she was terminated because of her association with Huffman on Campbell's statement that Waters told him that he was going to fire plaintiff because of her "ties to Huffman." Campbell's averment is too ambiguous to be meaningful. More important, since plaintiff does not allege that she engaged in any associational activities, *i.e.* providing volunteer services or financial support, or attending public, private or social gatherings with or for Huffman, the court finds that plaintiff fails to state a claim for violation of her right to freedom of association. *See Cummings v. DeKalb County,* 24 F.3d 1349, 1354 (11th Cir.1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). Defendant Waters is entitled to summary judgment on this claim.

### 2. Immunity Defenses

Having found that plaintiff sufficiently states claims of discrimination based on race and gender to survive summary judgment, the court will now consider whether any doctrines of immunity preclude suit against defendant Waters in his official or individual capacities.

### a) Official Capacity Liability–Eleventh Amendment Immunity

▬ The Eleventh Amendment of the United States Constitution prohibits federal courts from exercising jurisdiction over a lawsuit against a state, its agents or instrumentalities except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Edelman v. Jordan,* 415 U.S. 651, 653, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–908, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Congress exercised its abrogation authority for suits brought pursuant to Title VII of the Civil Rights Act, and therefore, the Eleventh Amendment does not preclude suit against Waters for plaintiff's Title VII claim. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Allen v. Alabama State Bd. of Educ.,* 816 F.2d 575, 577 (11th Cir.1987). Therefore, if Eleventh Amendment immunity is available for Waters, only plaintiff's claims under Section 1983 would be precluded. It is a disputed legal issue, however, whether Waters is a state or local official.

Waters makes the untenable argument that as probate judge he is an executive officer of the State of Alabama pursuant to Alabama Constitution of 1901, Article V, § 112. Section 112 enumerates the following officials as officers of the executive department: governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county. Probate judges are not included in this designation nor is there a reasonable basis for the contention that they are intended to be.

More important, the Supreme Court of Alabama long ago resolved the issue of the official status of a county probate judge. In *Hawkins v. Jefferson County,* 233 Ala. 49, 169 So. 720 (1936), the court held that since the state constitutional provision that provides for the creation of the probate courts limited those courts' jurisdiction to the county, and the probate judge is "elected by the vote of a single county confined in duty to the territorial limits of that county," the proper construction of the constitution makes the probate judge a county officer.

Additionally, the Alabama Supreme Court found that the county probate judge was a proper defendant in an action by a former

probate office employee alleging breach of contract and wrongful discharge because the judge he had the authority to employ and terminate persons working in the probate office. *Williams v. Killough,* 474 So.2d 680, 681 (1985). Certainly, if a privilege precluding suit against the probate judge was available, the court would not have deemed the probate judge "a proper defendant." *See also McDaniel v. Woodard,* 886 F.2d 311 (11th Cir.1989) (plaintiff maintained action against Pickens County, Alabama district court judge under Section 1983 alleging that she was terminated in violation of her first amendment rights).

As a probate judge for Bullock County, defendant Waters is not a state official, and, therefore, is not immune from suit under the Eleventh Amendment of the United States. Moreover, since Waters is a county official, he is within the definition of "persons" subject to liability under Section 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Mandel v. Doe,* 888 F.2d 783 (11th Cir.1989).

■ Defendant Waters's motions to dismiss and for summary judgment in his favor on plaintiff's Title VII and Section 1983 race and gender discrimination claims against him in his official capacity are due to be denied.

### b) Individual Capacity Liability

#### i. Title VII Claims

Defendant Waters's motion to dismiss plaintiff's Title VII claims against him in his individual capacity is due to be granted. The relief available to a plaintiff under Title VII is against the employer, not the individual employees whose actions constitute a violation of the Act. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Therefore, the proper method for the plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly. *Id.* Accordingly, a plaintiff can maintain an action against her employer through suit against her supervisory in his official capacity only. *Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995).

Plaintiff's Title VII claim, therefore, can proceed against Waters only in his official capacity as Probate Judge of the Bullock County.

#### ii. Section 1983 Claims

■ Defendant Waters also argues that he is entitled to qualified immunity for plaintiff's Section 1983 claim against him in his individual capacity. Qualified immunity protects "government officials performing discretionary functions from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The issue that the court must resolve is "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). *See also Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–1793, 114 L.Ed.2d 277 (1991). Thus, if the contours of the right that defendant allegedly violated is sufficiently clear such that a reasonable official would have understood that his conduct was unlawful, the defendant is not entitled to qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

A person's right to be free from discrimination in the workplace because of her gender or race has been long established. *Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145 (11th Cir.1990); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056 (11th Cir.1992). Thus, if defendant Waters is found to have terminated plaintiff because of her gender or race, such conduct violates clearly established constitutional rights, and this would have been known to a reasonable official in Waters's circumstances. Accordingly, Waters's is not entitled to qualified immunity for plaintiff's race and gender discrimination claims as enforced under Section 1983.

In summary, the court finds that plaintiff's claim that she was terminated because of her race and gender in violation of Title VII and the equal protection clause of the Fourteenth Amendment as it is enforced under Section

1983 survives Waters's motions to dismiss and for summary judgment. Plaintiff may proceed against Waters in his official capacity only on her Title VII claim but Waters may be subject to liability under Section 1983 in his official and individual capacities.

3. Bullock County, Bullock County Commission and Trussell, Hall, McGowan, Ellis and Perry as members of Bullock County Commission [19]

■ The general defense of the county defendants is that they cannot be subject to liability for any employment decision affecting plaintiff because they did not exercise any control over her employment. Specifically, County defendants contend that plaintiff's claims against them alleging violations of Title VII and the equal protection clause of the Fourteenth Amendment as enforced under Section 1983 should be dismissed because plaintiff fails to demonstrate that these defendants intentionally discriminated against her. County defendants also contend that they are not plaintiff's "employer" as that term is defined in Title VII, and that even if this court should find that they are plaintiff's employer, the Title VII claim against them should be dismissed because they were not named as plaintiff's employer in her EEOC charge. County defendants also move to dismiss plaintiff's Section 1983 and state law claims because those claims are premised on a theory of *respondeat superior* and fail to state a claim for relief. The County Commission members also argue that they are entitled to qualified immunity for plaintiff's claims against them in their individual capacities.

Once again, the court will first determine whether plaintiff states a claim against these defendants and then consider defendants' immunity defenses.

a) Liability under Section 1983

■ A local government may be subject to liability under Section 1983 if the constitu-

tional violation that a plaintiff complains of is caused by a "policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officials." *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036. Since a local government is liable only for constitutional deprivations that result from its customs, policies and practices, a plaintiff cannot rely on a theory of *respondeat superior* to impute liability on the governmental entity based upon the acts of one of its officials. *Id.* at 691, 98 S.Ct. at 2036. A local government may be subject to liability based upon the conduct or decision of one of its officials only if the official is the final authority or ultimate repository of power for that entity. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–483, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986); *Parker v. Williams,* 862 F.2d 1471, 1480 (11th Cir.1989). Therefore, in this action, the county defendants would be liable for Waters's decision to terminate plaintiff if Waters was delegated the final policy making authority for terminating clerks in the probate office. *Welch v. Laney,* 57 F.3d 1004, 1009 (11th Cir.1995). *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 998 (11th Cir.1990).

The determination whether an offending official is a final policymaker for a local government is a question of law resolved in accordance with the laws of the state, including local ordinances and regulations. *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300; *Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989). County defendants contend that they did not have any authority over the employees of the probate office, and therefore, the could not have established a custom and practice for any employment decisions related to those staff members. County defendants rely on Alabama Act No. 86–488 which grants the Probate Judge of Bullock County the "absolute right" to hire an additional clerk to support their argument that

---

**19.** Since the County Commission is the governing body for Bullock County, and a suit against the commission members in their official capacities is a suit against the county, the court refers to defendants Bullock, County, its Commission and Commissioner members sued in their official capacity collectively as "county defendants."

*See Hafer v. Melo,* 502 U.S. 21, 23, 112 S.Ct. 358, 360–361, 116 L.Ed.2d 301 (1991); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (suit against a municipal officer sued in his official capacity and direct suit against municipality are functionally equivalent).

they had no authority over probate office employees.

Act No. 86–488 relates to hiring and funding additional clerks in the probate office for Bullock County.[20] The Act does not include any provision related to the terminating clerks in the probate office. In fact, County defendants do not point to any state or local law which specifically relates to the probate judge's authority to terminate a clerk. Since plaintiff is challenging her termination only, the fact that the County defendants may not have exercised any control or authority over hiring practices or work conditions in the probate office is not relevant or indicative of the ultimate question whether the County defendants had final authority related to other employment decisions. *See Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (The court must find the policy specifically related to the challenged conduct because an official may be the final policy maker with respect to some actions but not others.) *See also McMillian v. Johnson,* 88 F.3d 1573, 1582 (11th Cir.1996). Therefore, since the county defendants have not identified a local law that vests the probate judge for Bullock County with exclusive and final authority to terminate clerks, the court cannot find that Waters was the ultimate repository of county authority for terminating members of the probate office.

Plaintiff on the other hand, points out that the personnel policies adopted by the county defendants permit a terminated employee to appeal her dismissal to the County Commission. *See* Personnel Policy Statements of the County Commission of Bullock County Union Springs, Alabama at p. 22 § (c). The grievance procedure also provides that the decision of the County Commission is final. Personnel Policy Statements at p. 15 Step 3(c). The plain language of Bullock County's personnel statement indicates that the final policymaking authority regarding decisions to terminate county personnel is vested with the County Commission. This authority is not compromised based on the office where the employee worked or who hired the employee. It also is noteworthy that the County's personnel statement does not provide for appeals to the County Commission challenging hiring decisions. Consistent with Act. No. 86–488, the county personnel policies do not intrude upon the probate judge's authority to make hiring decisions. Additionally, it is particularly telling that in advising plaintiff that she was being terminated, not only did Waters rely on the County personnel manual to support his grounds for terminating plaintiff, he also complied with the notice requirements enunciated in the personnel manual, p. 22 at (b), and advised plaintiff that in accordance with the County's personnel policies she had the right to appeal his decision to the County Commission.

■ Thus, since the policies and practices of Bullock County provides for review of a county official's decision to terminate an employee, the court finds that Waters cannot be deemed the final policymaking authority for the county in that area of personnel practices. *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988); *Martinez v. City of Opa–Locka, Florida,* 971 F.2d 708, 714–715 (11th Cir.1992). The County Commission retained the final authority for terminating county employees, including clerks employed in the probate office. Therefore, it is not enough for plaintiff to rely on the conduct of Waters to impose liability on the county defendants. In this action, the county defendants may be subject to liability related to plaintiff's termination only if the County Commission itself terminated in violation of her constitutional rights by ratifying the decision to terminate her in

---

**20.** The relevant provisions of Alabama Act No. 86–488 provide:

Section 1. The probate judge of Bullock County shall have the absolute right to hire one additional clerk to serve in his office. Said clerk shall be employed by and serve at the pleasure of the probate judge. The salary of this clerk shall be set by the county commission of Bullock County in such amounts as they deem appropriate.

Section 2. In addition to the above clerk, the probate judge may hire additional clerks to serve in his office and to serve at his pleasure; provided, however, that such additional clerks must be approved by the county commission of Bullock County who shall set their salary from time to time.

the face of evidence that the basis for that decision violated plaintiff's constitutional rights. *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926; *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 998 (11th Cir. 1990).

County defendants' contention that they cannot be subject to liability because although they held the hearing, they did not issue any decision, on advise of counsel, is specious.[21] By doing nothing, particularly after conducting the hearing and receiving evidence, the County Commission effectively ratified Waters's decision to terminate plaintiff. Accordingly, if the plaintiff demonstrates that the County Commission ratified Waters's decision although terminating her violated her constitutional rights, she states a claim against the county defendants.

It is undisputed that the only evidence presented at plaintiff's hearing before the County Commission related to her claim that she was terminated in violation of her First Amendment rights of freedom of speech and freedom of association.[22] Plaintiff did not present any evidence or raise any argument at the County Commission hearing that Waters terminated her because of her race or gender. Therefore, since plaintiff did not allege that she was terminated for those reasons at the hearing, the court cannot find that the County Commission ratified Waters's decision to terminate her in violation of her right to equal protection under the law.

Additionally, plaintiff fails to present any evidence in this action to demonstrate that the County Commission's conduct was motivated by racial animus. Accordingly, the court finds that plaintiff fails to state a claim

of racial or gender discrimination against the county defendants.

### b) Liability Under Title VII

Since the court finds that Waters is a county official, he is, in fact, an agent of the county serving in a supervisory capacity. By suing Waters in his official capacity plaintiff is effectively suing the county. *Cross,* 49 F.3d at 1504. Therefore, it is redundant and unnecessary to keep the county defendants as defendants on plaintiff's Title VII claim.

### c) State Law Claims

Plaintiff contends that the manner in which she was terminated gives rise to state law claims for breach of contract and wrongful termination because defendants failed to provide her with due process of law.[23] Specifically, plaintiff alleges "[t]o hold a hearing because 'she [plaintiff] asked for it ...,' to fail or refuse to take any action at all, either positive or negative, because of the hearing, to terminate any employee without following the procedures set out by the entity itself, cannot and do not meet the requirements of due process."

Statement of Facts filed December 5, 1996 at VII.

It is important to be clear what plaintiff does not allege regarding her due process claim. Plaintiff does not allege that she did not receive adequate notice of the reason that she was being discharged; she does not allege that she was denied a meaningful opportunity to object to her termination; and, she does not allege that she was not permitted to present witnesses on her behalf. Basically, plaintiff's contention is that her hearing

---

**21.** Reliance on the advise of counsel is a relevant consideration in evaluating whether the commission members would be entitled to qualified immunity but does not influence the determination whether the conduct complained of is actionable under Section 1983. *See Stone v. Peacock,* 968 F.2d 1163 (11th Cir.1992).

**22.** As the court discussed previously, since plaintiff failed to demonstrate that Waters's decision to terminate because of her speech or her association with Huffman violated her First Amendment rights, county defendants are not liable for ratifying Waters's decisions based on those grounds. County defendants also are entitled to

summary judgment on plaintiff's First Amendments.

**23.** In the complaint, plaintiff alleges

the termination of her employment was wrongfully carried out in breach of her employment with Bullock County, as evidenced by the employee manual issued to her upon her employment with the County. Said manual provided that she could only be terminated by the County Commission. Plaintiff was not terminated by the Commission, but has been prevented from working.

Complaint ¶ 28.

was debased because the County Commission did not have "good intentions" in conducting the hearing.

To establish a procedural due process claim, plaintiff must show that she had a constitutionally protected interest in continued employment, *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), and that the procedure that led to the deprivation of that right was inadequate. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A plaintiff must satisfy both elements in order to establish a procedural due process claim. *See Nicholson v. Gant,* 816 F.2d 591 (11th Cir.1987).

The essential elements of procedural due process are notice and an opportunity to be heard before one is deprived of a protected property interest. *Loudermill,* 470 U.S. at 542–543, 105 S.Ct. at 1493–1494; *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. Plaintiff was provided both. Plaintiff's contention that the County Commission's failure to render a decision within five days of the hearing violated the grievance procedure enunciated in the county personnel manual does not state a claim that rises to a constitutional deprivation. The minimum requirements of procedural due process are a matter of federal law. *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980). Failure to comply with an administrative regulation, without more, does not indicate a violation of one's due process right. *Crosby–Bey v. District of Columbia,* 786 F.2d 1182 (D.C.Cir.1986). Although the county's personnel procedures may have required the County Commission to render a decision within five days, plaintiff does not show that its failure to do so compromised any constitutionally protected right, i.e. being denied an appeal of the decision as untimely because she was waiting for the County Commission to render a decision. Additionally, although the County Commission did not formally reach a decision, its failure to alter, modify or otherwise respond to the contested employment decision, infers that the County Com-

mission ratified Waters's decision. Frankly, since plaintiff pursued claim of wrongful termination with the EEOC, the court concludes that plaintiff made such an inference and pursued another avenue to challenge her termination.

Since plaintiff was provided a meaningful opportunity to challenge Waters's employment decision, she was not denied due process. Accordingly, defendants' motions to dismiss and for summary judgment because plaintiff fails to state a claim of wrongful termination and breach of contract are due to be granted.[24]

## IV. CONCLUSION

Plaintiff's Title VII claim against Bullock County, the Bullock County Commission, and Pete Trussell, Randolph Hall, Dock McGowan, Alonzo Ellis and James Perry, individually and in their official capacity as members of the Bullock County Commission is DISMISSED. The motion for summary judgment on plaintiff's Section 1983 claims filed by defendants Bullock County, the Bullock County Commission, and Pete Trussell, Randolph Hall, Dock McGowan, Alonzo Ellis and James Perry, individually and in their official capacity as members of the Bullock County Commission is GRANTED. These defendants are entitled to summary judgment in their favor and plaintiff's claims against them are dismissed with prejudice because plaintiff fails to state a claim against them. These defendants will bear their own costs.

Defendant Waters's *motion for summary judgment for failure to state a claim* that he terminated plaintiff in violation of her First Amendment right to freedom of speech and freedom of association is GRANTED, and his motion to dismiss plaintiff's Title VII claim against him in his individual capacity is GRANTED. Defendant Waters's motions to dismiss and for summary judgment based on qualified immunity, Eleventh Amendment immunity, any and all other grounds are DENIED. Accordingly, this matter shall

---

**24.** To be clear, the court does not make any ruling regarding whether plaintiff's expectation of continued employment was a protected property interest. Such a determination is not neces-

sary because even if plaintiff had a protected interest her continued employment she has not shown that the procedure used to deprive her of that right was constitutionally defective.

proceed for trial against Defendant Waters in his official capacity on plaintiff's claim that she was wrongfully terminated because of her race and gender in violation of Title VII and in his individual and official capacities on plaintiff's claim that her right to equal protection of the law was violated as it is enforced under Section 1983.