No. 13-1084 - <u>Constellium Rolled Products Ravenswood, LLC et al v. Griffith et al.</u>

**FILED**

**June 10, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I once again express my staunch disagreement with the majority's baseless conclusion that the respondents advanced a viable gender discrimination claim. Faced with an opportunity on rehearing to correct its initial mishandling of this verdict, a majority of this Court refuses to apply well-established principles of employment law and common sense, as more fully explained below.

At the outset, let me be clear that my concurrence is limited *strictly* to the striking of punitive damages due *solely* to the absence of an actionable claim in the first instance. In no way do I subscribe to the majority's pretextual analysis regarding the punitive damages claim inasmuch as there is quite simply no claim upon which damages of any type–punitive or otherwise–may be awarded. In my view, the majority's substantive analysis in support of striking the punitive damages is a thinly veiled attempt to mask the plainly inadequate claim advanced by the respondents and obscure the majority's empty analysis in support of it. Striking punitive damages does nothing to "cure" the injustice occasioned by this verdict, and I will not subscribe to a false analysis of damages which should not exist in the first instance. With every word in support of striking punitive

1

damages, the author of this plurality opinion[1] underscores the meritless nature of the gender discrimination to which the author lends his unqualified support.

Concerning the issue of the viability of the gender discrimination claim, let me reiterate that while I emphatically agree that the language utilized by Mr. Keifer in the original comment cards was without question both highly inappropriate and certainly an unacceptable manner of referring to a female co-worker, regardless of the context or situation, the incivility at issue in this case did not rise to the level of proof necessary to establish a claim of gender discrimination, sexual harassment, or hostile work environment. Highly significant is the fact that in affirming the jury's verdict as to compensatory damages, the majority fails to cite a single factually analogous case. This omission, especially considering the vast federal and state jurisprudence addressing allegations of workplace discrimination, signals loud and clear that the evidence in this case was woefully inadequate to sustain the respondents' claims.

---

[1] Inasmuch as I concur in the result only as it pertains to punitive damages and do not concur in the rationale advanced by the author, the analysis as to punitive damages does not "enjoy[] the assent" of three Justices and is therefore, as to that aspect, a plurality opinion. *Marks v. United States*, 430 U.S. 188, 193 (1977) (citing *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976)). As we previously explained, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority of] Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . .'" *State v. Kennedy,* 229 W. Va. 756, 735 S.E.2d 905 (2012) (citations omitted).

In this case, the respondents were subjected to three written, anonymous comment cards, which contained redacted epithets that referred to them individually, or collectively, as a "lazy worthless b_____ and a "lazy a___." These comment cards were posted by the employer one time on a bulletin board alongside numerous other comment cards and other unrelated employment postings, and they were taken down immediately after only a couple of days. These comments were treated in precisely the same manner as similar comments that were directed toward male employees–redacted for employee name and profanity and responded to by the employer in a gender-neutral fashion with regard to the substance of the comment. Moreover, testimony was adduced that the respondents, who claim to be victims of gender discrimination, often used "rough language" while at work, such as "b*tch," "sh*t," and "d*mn," and referred to each other as "lazy b*tches" and to other employees as "a**hole," "qu*er," and "little baldheaded pr*ck."

It is well-accepted in federal jurisprudence[2] that "the use of a gender-specific term in a derogatory comment does not necessarily indicate that the comment is directed at the person's gender." *State v. Franklin,* 534 S.E.2d 716 (S.C. App. 2000); *see Johnson v. Waters*, 970 F.Supp. 991 (M.D. Ala.1997) (holding that use of derogatory term, standing

---

[2]This Court has repeatedly held that we analyze cases brought under the Human Rights Act consistent with the manner in which federal anti-discrimination laws are applied, barring statutory distinctions or other compelling reasons. *See Hanlon v. Chambers*, 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (1995).

3

alone, is not necessarily direct showing of discrimination, but rather must be considered in context of its use); *Kriss v. Sprint Comm'ns Co.*, 58 F.3d 1276, 1281 (8th Cir. 1995) (concluding that use of term "bitch" did not indicate "a general misogynist attitude" as it was directed at only one woman and thus was not "particularly probative of gender discrimination"); *Blankenship v. Warren Cnty. Sheriff's Dept.*, 939 F.Supp. 451 (W.D. Va. 1996) ("Even though the term 'bitch' is usually offensive, it is not necessarily gender-based."); *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (calling someone "bitch" fails to establish conclusively that such harassment "was motivated by gender rather than by a personal dislike unrelated to gender"); *Panelli v. First American Title Ins. Co.,* 704 F. Supp.2d 1016 (D. Nev. 2010) ("Use of the word, 'bitch,' standing alone, is not sufficient to show gender bias."); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1513 (D.C. Cir.1995) (considering plaintiff's evaluation by supervisor that she was a "bitch" in conjunction with accompanying commentary that plaintiff was "extremely difficult on secretarial and support staff" as stating gender-neutral concerns about plaintiff's interpersonal relations with co-workers, rather than discriminatory considerations); *Williams v. KETV TV, Inc.*, 26 F.3d 1439, 1441 n.2 (8th Cir. 1994) (affirming judgment for employer on charge of sex and race discrimination despite evidence at trial that personnel involved in hiring decision referred to plaintiff as "black bitch"); *Moulds v. Wal-Mart Stores, Inc.*, 935 F.2d 252, 253-54 n.1, 256-57 (11th Cir. 1991)

(affirming judgment for employer on sex and race discrimination charge despite evidence that employer told plaintiff she would have to be more of a "bitch" to become manager); *Bressner v. Caterpillar, Inc.*, 2008 WL 345550, at \*4 (C.D. Ill. Feb. 7, 2008) (finding that "[n]o jury would find that referring to a woman as a 'bitch,' even a 'f\*cking bitch,' . . . is evidence of a discriminatory intent.").

> As the Eighth Circuit explained in *Kriss*:
>
> While these comments are rude, they do not furnish much proof of gender discrimination. Calling a particular person ugly or using an epithet characterizing a person as unpleasant is not particularly probative of whether someone would refuse to promote someone else for improper reasons. Specifically, the word "bitch," it seems to us, is not an indication of a general misogynist attitude. Rather, it is a crude, gender-specific vulgarity, which in this case was directed toward only one woman, rather than women in general. (We note the existence of many vulgar epithets that are used only of men that, we believe, would not be indicative of animus against males.).

58 F.3d at 1281.  Similarly, in the case at bar, the mere fact that Mr. Keifer is male and the respondents are female is not indicative of gender bias.  *See also Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion."); *Phillips v. Raytheon Applied Signal Technology, Inc.*, 2013 WL 5440802 (D. Md. 2013).  Likewise, the law does not "blindly ascribe" gender animus to all conflicts between men and women, particularly when the source of the conflict

5

is gender-neutral. In this case, it is perfectly clear from a plain and objective reading of the comments that the source of Mr. Keifer's vitriol was not the respondents' gender but his perception that the respondents are lazy. Further, his complaints of alleged laziness were corroborated by very fact-specific instances of the respondents' purported work-place indolence–none of which had anything to do with the fact that they were women.

The majority's decision in this case is as baseless as that once bemoaned by my colleague Justice Davis in *Fairmont Specialty Services v. West Virginia Human Rights Commission*, 206 W.Va. 86, 522 S.E.2d 180 (1999). As Justice Davis aptly stated in her dissent:

> Where the majority goes seriously astray is in its fundamental misconception that anti-discrimination laws were intended to completely eliminate any and all bickering and even profanity from the workplace. As the United States Supreme Court has made clear, "Title VII does not prohibit all verbal or physical harassment in the workplace." Rather, it is directed only at prohibited discriminatory conduct.

206 W. Va. at 99-100, 522 S.E.2d at 193-94 (Davis, J., dissenting) (citations omitted). The majority, now joined by Justice Davis, finds itself veering seriously astray of established employment law principles. As the United States Supreme Court has stated:

> We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely *because the words used have sexual content or connotations.* "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which

6

members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) and emphasis added).

"[F]ederal as well as state anti-discrimination laws are not codes of civility. Employers, much as they would like, simply cannot rid the workplace of all instances of inappropriate employee behavior." *Fairmont Specialty*, 206 W. Va. at 103, 522 S.E.2d at 197 (Davis, J., dissenting) (citations omitted). The alleged discriminatory activity in this case was so fleeting, isolated, and legally inconsequential that I am forced to echo the sentiments of Justice Davis fifteen years ago when she poignantly queried: "And we wonder why it is so difficult to attract new employers to this State?" *Id.* at 103, 522 S.E.2d at 197.

Therefore, for the reasons stated above, I respectfully dissent to the majority's decision to uphold the award of compensatory damages based on its erroneous conclusion that the respondents established a viable gender discrimination claim. For that same reason, and that reason alone, I concur that punitive damages must be stricken from this verdict.