The plaintiff, Robin Henry, appeals from a summary judgment in favor of the defendants Georgia-Pacific Corporation and Johnny Hurst. The trial court made that summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P.
In order to enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Travis v. Scott,667 So.2d 674 (Ala. 1995).
Viewed most favorably toward the plaintiff, the evidence suggests the following: Robin Henry was employed by Georgia-Pacific. Georgia-Pacific had a contract with Zwiebel 
Associates, Ltd. ("Zwiebel"), a management and consulting firm. Zwiebel was in charge of conducting employee training for Georgia-Pacific. Zwiebel hired Dr. Charles Ted Deeble. Dr. Deeble conducted some of the training and was in charge of one-on-one counseling sessions with the employees. The counseling sessions were to be business-related, according to Zwiebel; however, its president acknowledged that it never specifically told Dr. Deeble to limit the one-on-one sessions to business-related matters. (C.R. 522-23.)
According to Dr. Deeble, one of the rules for the one-on-one sessions was that the employee would select the topics for discussion. (C.R. 543-44.) Georgia-Pacific never placed any restrictions on the subjects that could be discussed in the individual sessions. (C.R. 550.) Perry Nelson, the plant manager *Page 120 
for Georgia-Pacific, told Mrs. Henry that she was to meet with Dr. Deeble. (C.R. 548-49, 557.) Nelson placed no restrictions on the topics that could be discussed at the sessions. (C.R. 559.)
Dr. Deeble had helped some of the other employees quit smoking. (C.R. 312, 317.) Mrs. Henry asked Dr. Deeble to help her quit smoking and to help her learn to relax. Another employee had told Mrs. Henry that Dr. Deeble used hypnosis to help stop smoking. (C.R. 665.) At her first session with Dr. Deeble, Mrs. Henry had a positive experience with hypnosis and practiced self-hypnosis techniques.
Dr. Deeble admitted that, during a later session, he asked Mrs. Henry if she was able to achieve an orgasm with her husband. (C.R. 569.) While he hypnotized Mrs. Henry, Dr. Deeble told Mrs. Henry that she was "getting horny." (C.R. 335.) Dr. Deeble acknowledged that, during one session, Mrs. Henry reported that she had an orgasm-like experience during the hypnosis. (C.R. 548-49.) Dr. Deeble said he was unsure whether he told Mrs. Henry that he was "getting horny." (C.R. 551-52.) He admitted that he told Mrs. Henry how to experience an orgasm by imagining sexual intercourse with her husband and how to "become more responsive overall in a sexual manner." (C.R. 553-54, 220-21.) Dr. Deeble said that he may have told Mrs. Henry that he had helped other employees with sexual problems. (C.R. 560-61.)
Mrs. Henry testified that she understood the purpose of the sessions to be to help the employees have a better attitude. (C.R. 631.) She said her supervisors told her that "everybody would be involved and [that] we needed to cooperate fully." (C.R. 632.) Plant manager Nelson stated to Mrs. Henry, "[Y]ou will cooperate or you don't have a job." (C.R. 633.)
Mrs. Henry told Johnny Hurst, a supervisor, about Dr. Deeble's questioning her about orgasms, seeking his help in the matter. (C.R. 649, 658, 660, 672-74.) Mrs. Henry then tape-recorded her next session with Dr. Deeble. She played the tape for Hurst so that he could listen to Dr. Deeble asking her to take off her shirt. (C.R. 659.) Randy Youngblood, an assistant plant superintendent, came in and told Mrs. Henry that Dr. Deeble was "sweet on [her]." (C.R. 650-53.) Younglood told Mrs. Henry that she had to continue with the sessions or else lose her job. (C.R. 661, 663, 666-67.)
Mrs. Henry stated in her deposition that she did not want to continue with the individual sessions but that she feared losing her job if she refused to see Dr. Deeble or refused to cooperate with him during the sessions. (C.R. 654-55.) Johnny Hurst advised Mrs. Henry to say nothing about the one-on-one sessions if she wanted to keep her job. (C.R. 662-63.) Mrs. Henry continued with the sessions until Dr. Deeble stopped coming to the plant.
Mrs. Henry sued Georgia-Pacific, Zwiebel, Dr. Deeble, and Johnny Hurst. In her complaint, Mrs. Henry sought to hold Georgia-Pacific vicariously liable for Dr. Deeble's acts. She also alleged a direct cause of action, based on the tort of outrage, against Georgia-Pacific and Johnny Hurst for requiring her to see Dr. Deeble. (C.R. 19-20.) Georgia-Pacific and Johnny Hurst filed a joint motion for summary judgment. Mrs. Henry abandoned her vicarious-liability claim against Georgia-Pacific and Johnny Hurst and argued that their legal accountability arose out of insisting that she continue meeting with Dr. Deeble after she had reported what had occurred during the sessions.
The trial court entered a summary judgment for Georgia-Pacific and Johnny Hurst, based on Hendley v. Springhill Memorial Hospital,575 So.2d 547 (Ala. 1990). The claims against Zwiebel and Dr. Deeble are still pending in the trial court.
In Hendley, we affirmed a summary judgment in favor of a hospital in a situation where an independent contractor of the hospital had performed an unnecessary vaginal examination. In Hendley, the hospital did not know of the independent contractor's actions. However, in this present case, the evidence indicates that Georgia-Pacific was told of Dr. Deeble's alleged improper sexual conduct and demanded that Mrs. Henry continue with the sessions or else lose her job. *Page 121 
Egregious sexual harassment can amount to the tort of outrage. Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala. 1989). In Busby, a supervisor repeatedly subjected the plaintiffs to sexually harassing comments. The plaintiffs told management in general terms of the harassment, but did not initially give the details or the full extent of that conduct, and the plaintiffs did not give management time to correct the situation. This Court held that the company was not liable on the claim of outrage, based on those facts. Unlike the plaintiffs in Busby, Mrs. Henry notified a supervisor of the specific comments made by Dr. Deeble and even let him listen to a tape-recording of the comments.
Viewing the facts in the light most favorable to Mrs. Henry, as we are required to do, we conclude that the summary judgment must be reversed. A jury could reasonably determine that Georgia-Pacific and Johnny Hurst's conduct was outrageous — that Johnny Hurst, working as a supervisor, was told exactly what had occurred during the sessions; that Georgia-Pacific, with prior knowledge, required Mrs. Henry to continue counselling sessions at which improper sexual conduct was occurring; and that they made Mrs. Henry's job dependent upon her attending those sessions.[1]
REVERSED AND REMANDED.
Hooper, C.J., and Almon, Shores, Cook, and Lyons, JJ., concur.
Maddox, J., dissents.
Houston, J., recuses himself.
[1] Justice Maddox urges in his dissent that Georgia-Pacific should be insulated from liability by reason of Henry's understanding that her communications to her supervisors at Georgia Pacific were confidential. However, the record reflects that, as to whether Hurst was to keep those communications private and confidential, Henry testified, "I don't know that it was my understanding." As for her communications to Youngblood, Henry said she "may have" told him to keep the conversations confidential. Moreover, even if Hurst and Youngblood, in support of Georgia-Pacific's motion for summary judgment, had offered evidence indicating that they had not communicated any information concerning their discussions with Henry and that their failure to do so was based on the understanding of confidentiality, the credibility of that evidence would be an issue for the jury. Under these circumstances, a jury question exists as to the knowledge of Georgia Pacific.