Kathleen JOHNSON, Bonnie Rokovitz, and Jeanne Tillery, Plaintiffs,

v.

Bo BALLARD, Individually and in His Official Capacity as Sheriff of Cherokee County; Roscoe Parris, Individually and in His Official Capacity as Chief Deputy of the Cherokee County Sheriff's Department;

Roger Garrison, Individually and in His Official Capacity Sergeant in the Cherokee County Sheriff's Department; and William Rymer, Individually and in His Official Capacity as Sergeant in the Cherokee County Sheriff's Department; Cherokee County, Georgia, Defendants.

Civ. A. No. C85–2221A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 26, 1986.

William J. Cobb, Kocher, Wilson, Korschun & Cobb, Atlanta, Ga., for plaintiffs.

Hunter S. Allen, Doster, Allen & King, Atlanta, Ga., Elliott R. Baker, Canton, Ga., Michael O'Quinn, Theodore Freeman, Atlanta, Ga., Philip C. Smith, Canton, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging violations of their Fourteenth Amendment rights to equal protection, due process and privacy. Plaintiff Rokovitz also alleges violation of her

First and Fourteenth Amendment right to freedom of association. Plaintiff Tillery additionally alleges violation of her First and Fourteenth Amendment right to petition for redress of grievances. In addition, in pendent state law claims, plaintiffs allege violations of several laws of the State of Georgia. This court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1334 (West Supp.1985). The action is currently before the court on defendants' motions for summary judgment. For the reasons stated herein, the court DENIES defendants' motions.

## FACTS

Plaintiffs are all former employees of the Sheriff's Department of Cherokee County, Georgia. Plaintiffs Johnson and Rokovitz were employed as Deputy Sheriffs and plaintiff Tillery was employed as a Dispatcher. Defendant Ballard is the Sheriff of Cherokee County, Georgia. Defendant Parris is the Chief Deputy of the Cherokee County Sheriff's Department and defendants Garrison and Rymer were Sergeants in the Cherokee County Sheriff's Department at all times relevant to plaintiffs' complaint.

Plaintiffs allege that during the course of their employment with the Cherokee County Sheriff's Department, the defendants engaged in activity that violated plaintiffs' Fourteenth Amendment equal protection and due process rights as well as their constitutional right to privacy. Specifically, plaintiffs allege that defendants engaged in "conduct including, but not limited to, obscene comments, solicitation for sexual acts including sodomy, unauthorized and sexually oriented physical touching of female officers and employees, obscene physical displays directed at female officers and employees, and threats that continued employment of female officers and employees was dependent upon engaging in sexual acts." First Amended Complaint, ¶¶ 11, 16, 24. Plaintiffs allege that at various times one or more of the following occurred: defendants threatened to withhold paychecks until plaintiffs physically exposed themselves to superiors; defend-

ants asked plaintiffs to go to a motel to engage in sexual activity; plaintiffs were "touched and propositioned in a persistent manner by an apparently intoxicated superior;" and plaintiffs were "shot in the buttocks with an air pistol." *Id.* at ¶ 10.

In addition to the above allegations of conduct which deprived plaintiffs of their constitutional rights, plaintiff Rokovitz alleges that defendants harassed her "because of a voluntary, interpersonal relationship which she had with another officer ..." thereby violating her constitutional right to freedom of association. *Id.* at ¶ 19. Defendants allegedly verbally abused plaintiff Rokovitz and demanded she end the relationship or lose her job. Plaintiff Tillery additionally alleges that defendants violated her constitutional right to petition for redress of grievances. She alleges that defendants, upon learning she had filed an unrelated complaint with the Equal Employment Opportunity Commission ("E.E.O.C.") imposed "unwarranted discipline upon her, [made] unwarranted complaints against her, and [made] unreasonable demands of her." *Id.* at ¶ 26.

Each of the plaintiffs eventually resigned from her position with the Cherokee County Sheriff's Department. Each claims that she was, in effect, forced to resign as a result of the constitutional torts allegedly committed by defendants. None of the plaintiffs filed an employment discrimination complaint with the E.E.O.C. as required by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Defendant's Statement of Facts To Which There is No Genuine Issue To be Tried, ¶ 23.

Defendants deny that they engaged in any of the conduct alleged by plaintiffs. Moreover, in their motion for summary judgment defendants contend that, even assuming they did engage in the alleged conduct, plaintiffs' claims are not actionable under 42 U.S.C. § 1983 because Title VII preempts the earlier Civil Rights statutes. Defendant Cherokee County individually moves for summary judgment on the ground that it cannot be held liable for the actions of its employees solely on a theory

of *respondeat superior.* Further facts will be disclosed as necessary for discussion of the motions.

## DISCUSSION

All of the parties in this action agree that defendants' alleged violations of plaintiffs' constitutional rights occurred completely within the employment context. Defendants argue that, because plaintiffs' allegations may state a cause of action under Title VII, plaintiffs are precluded from bringing an independent § 1983 action. Defendant Cherokee County contends that, regardless of whether plaintiffs may bring this § 1983 action, it is shielded from liability under the doctrine stated by the Supreme Court in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court will consider defendants' motions for summary judgment separately.

### I. *Title VII Preemption of 42 U.S.C. § 1983*

■ Apparently, no court in this jurisdiction has ruled on the question of whether state and local employees who allege violations of their constitutional rights in the workplace may bring an action under 42 U.S.C. § 1983 independently or in lieu of an action under Title VII. In enacting Title VII of the Civil Rights Act of 1964, Congress provided a comprehensive administrative and judicial scheme for the redress of employment discrimination. On at least two occasions the United States Supreme Court has held that the comprehensiveness of Title VII indicates Congress' intent to establish Title VII as an exclusive and preemptive remedial statute for employment discrimination. *See Brown v. Gener-*

*al Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976) ("The balance, completeness, and structural integrity of § 717" suggests § 717 is preemptive and not designed to supplement other judicial relief); *Great American Federal Savings & Loan Assoc. v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (rights created by Title VII may not be asserted within remedial framework of 42 U.S.C. § 1985(3)).

The Supreme Court has not consistently held, however, that an employment discrimination claim may be raised only within the framework of Title VII. In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) the Court stated

> [T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

*Id.* at 48–49, 94 S.Ct. at 1019–20 (citations omitted). In reaching this conclusion the *Alexander* Court noted that in both 1964 and 1972 the Senate defeated amendments which would have made Title VII the exclusive federal remedy for most unlawful employment practices.[1] In a later opinion, the Supreme Court concluded that "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson v. Railway Express Agency,* 421 U.S. 454,

---

1. The Senate Report on the Equal Employment Opportunity Act of 1972 specified that neither the "provisions regarding the individual's right to sue under Title VII, nor any other provisions of this bill, are meant to affect existing rights granted under other laws." *Id.* at 48 n. 9, 94 S.Ct. at 1019 n. 9 (*quoting* S.Rep. No. 92.415, p. 24 (1971)).
Senator Williams, floor manager of the 1972 Act, specifically stated in opposition to the amendment to establish Title VII as an exclusive remedy that

> It is not our purpose to repeal existing *civil rights laws.* ... The law against employment discrimination did not begin with Title VII and the EEOC, nor is it intended to end with it. ... [T]he courts have specifically held that Title VII and the Civil Rights Act of 1866 and 1871 are not mutually exclusive, and must be read together to provide alternative means to redress individual grievances.

118 Cong.Rec. 3371 (1972) (emphasis added).

461, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

With this backdrop of seemingly conflicting Supreme Court doctrine, several lower courts have reached different conclusions when addressing the question of whether a state or local employee may pursue a 42 U.S.C. § 1983 action independently of Title VII.[2] This court is more persuaded by the reasoning of those courts which have allowed a plaintiff to bring a § 1983 action separate from a Title VII action where the plaintiff alleged constitutional violations arising out of discriminatory employment practices. This court believes that such a holding more closely comports with the intent of Congress than does a holding that state and local employees' remedies under 42 U.S.C. § 1983 are preempted by Title VII.

This result may seem incongruous given the Supreme Court holding in *Brown v. GSA, supra,* that § 717 of the Civil Rights Act of 1964 precludes a federal employee from pursuing anything but Title VII remedies. This result, however, follows from the explicit legislative history of the Equal Employment Opportunity Act of 1972 which brought federal and state employees under the umbrella of Title VII.[3]

As the Supreme Court stated, "§ 1983 is a statutory remedy and Congress retains the authority to repeal it or replace it with an alternative remedy. The crucial consideration is *what Congress intended.*" *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984) (emphasis added). In addition to Congress' defeat of amendments to establish Title VII as the exclusive federal remedy for unlawful employment practices, the House Report on the 1972 Act states:

> In establishing the applicability of Title VII to state and local employees, the committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... The bill, therefore, by extending jurisdiction to state and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R.Rep. No. 92–238 (1972), U.S. Code Cong. & Admin.News 1972, p. 2137.[4]

While Congressional intent may appear anomalous and unfairly favorable to state and local employees, it is nonetheless clear. Congress did not intend to deprive state and local employees the opportunity to pursue remedies available to them under 42 U.S.C. § 1983 for redress of employment discrimination.

█ Of course, a plaintiff cannot state a claim under § 1983 unless she alleges deprivation of her rights, privileges and immu-

---

2. *See generally Reiter v. Center Consolidated School District,* 618 F.Supp. 1458 (D.Colo.1985) and *Keller v. Prince George's County Dep't of Social Services,* 616 F.Supp. 540 (D.Md.1985) (Title VII preempts § 1983 and provides exclusive remedy for employment discrimination claim); *Alexander v. Chicago Park District,* 773 F.2d 850 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986) and *Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984) (Congress intended to retain preexisting rights and remedies and Title VII preempts other statutes *only* if right asserted was *created* by Title VII).

3. The Court of Appeals for the Seventh Circuit, in finding that Title VII is not the sole remedy for employment discrimination claims of state employees, noted that its "holding ... create[s] the anomalous situation that a federal employee is limited by the administrative procedures of Title VII while state employees are not. Because we interpret what remedies Congress have provided, we rule as we do." *Alexander v. Chicago Park, supra,* 773 F.2d at 856.

4. In *Novotny, supra,* in which the Supreme Court held that Title VII remedies preempt the remedies available under 42 U.S.C. § 1985, the Court referred to the legislative debates and noted that "[s]pecific references were made to §§ 1981 and 1983, but, significantly, no notice appears to have been taken of § 1985." *Great American Federal v. Novotny, supra,* 442 U.S. at 377 n. 21, 99 S.Ct. at 2351 n. 21.

nities secured by the Constitution and laws. Several courts have held that, if a plaintiff sues under § 1983 *only* for violations of rights *created by Title VII,* plaintiff's § 1983 claim is not actionable.[5] This court agrees with the reasoning of these courts that "it would be anomolous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983." *Day v. Wayne County, supra,* 749 F.2d at 1204. Accordingly, although this court finds that a state or local employee's preexisting remedies are not preempted by Title VII, the employee may not maintain a § 1983 action in lieu of Title VII if the only alleged deprivation is of the employee's rights created by Title VII.

■ In the instant action, plaintiffs allege several violations of their constitutional rights. Although these rights may overlap with plaintiffs' Title VII rights, they are not newly created by Title VII. The court notes that in this jurisdiction, courts have allowed plaintiffs to state separate causes of action under both Title VII and § 1983. *Cf., Palmer v. District Board of Trustees of St. Petersburg Junior College,* 748 F.2d 595, 596 n. 2 (11th Cir.1984) ("§§ 1981 and 1983 [employment discrimination] claims require the same elements of proof as a Title VII action.") (*citing Whiting v. Jackson State University,* 616 F.2d 116, 121 (5th Cir.1980)). The inescapable inference to be drawn from such cases is that, in this jurisdiction, like in the Fifth Circuit, a plaintiff may "elect to bring suit under as many applicable civil rights statutes as the facts of his case permit irrespective of the actual or potential overlap

of statutory remedies." *Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556, 561 (5th Cir.1983).[6] For these reasons, the court DENIES defendants' motion for summary judgment.

## II. *Liability of Defendant Cherokee County*

■ Defendant Cherokee County moves separately for summary judgment on the ground that it is shielded from liability under the doctrine stated by the Supreme Court in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The County correctly asserts that it cannot be held liable solely on a theory of *respondeat superior.* It contends that the County Commissioner has never promulgated a policy or practiced a custom of depriving County employees of their constitutional rights. The County also notes that it has no say in the Sheriff's decisions regarding employment of personnel in the Sheriff's Department. Under Georgia law, the Sheriff, an elected official, is vested with the final authority over employment decisions within his Department. Ga.Off'l Code Ann. § 15–16–23 (1982). *See Johnson v. U.S. Fidelity & Guaranty Co.,* 93 Ga.App. 336, 340, 91 S.E.2d 779 (1956) (Sheriff has power to appoint and discharge deputy and regulate his conduct with reference to the discharge of official duties).

In *Monell, supra,* the Supreme Court concluded that municipal liability under 42 U.S.C. § 1983 is limited to deprivations of rights caused by action taken "pursuant to official municipal policy of some nature...." *Monell, supra,* 436 U.S. at 691, 98 S.Ct. at 2036. The Court devised a

---

5. *See e.g., Day v. Wayne County Board of Auditors, supra,* 749 F.2d at 1204 (legislative debate evidences intention to allow suits under § 1983 for constitutional violations but not for violations of rights and remedies created by Title VII); *Alexander v. Chicago Park, supra,* 773 F.2d at 855 (Congress intended to retain preexisting remedies but if right was created by Title VII, it must be vindicated through procedural system set up by Act).

This holding comports with the Supreme Court conclusion in *Novotny, supra,* that "§ 1985(3) may not be invoked to redress violations of Title VII." *Great American Federal v. Novotny, supra,* 442 U.S. at 378, 99 S.Ct. at 2352.

6. The Fifth Circuit Court of Appeals has also held that rights *created* by Title VII may not be asserted within the remedial framework of § 1983. *See Irby v. Sullivan,* 737 F.2d 1418, 1429 (5th Cir.1984).

standard upon which individuals could recover from municipalities under § 1983.

> [A] local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983.

*Id.* at 694, 98 S.Ct. at 2037. Although the Cherokee County Commissioner has sworn in an affidavit that no discriminary county custom or policy exists, plaintiffs contend that the County may be held liable because the Sheriff's "acts may fairly be said to represent official policy."

The Supreme Court recently considered the question of whether a county may be held liable where Deputy Sheriffs, acting pursuant to an order of the County Prosecutor, deprived a plaintiff of his constitutional rights. In *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court reversed the lower court order dismissing Pembaur's claim against the county. After noting that under Ohio law the County Prosecutor could establish county policy under certain circumstances, the Court held, "In ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decision-maker for the county, and the. county may therefore be held liable under § 1983." *Id.* at 1301.

The Court in *Pembaur* clarified the scope of its holding. A municipality cannot be held liable for an official's activity unless the official is "responsible for establishing final government policy respecting such activity...." *Id.* at 1300. The Court further noted that

Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

*Id.*

In the instant action, the Sheriff has the authority, pursuant to state law, to hire and fire the Sheriff's Department personnel. On matters of employment, therefore, the Sheriff is the final authority responsible for establishing government policy. The former Fifth Circuit, in an opinion which binds this court, noted

> Because of the unique structure of county government ... the judge—*like other elected county officials, such as the sheriff* and treasurer—holds virtually absolute sway over the particular tasks or areas of responsibility entrusted to him *by state statute* and is accountable to no one other than the voters for his conduct therein. Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under § 1983.

*Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980) (*quoting Monell, supra,* 436 U.S. at 694, 98 S.Ct. at 2037) (citations omitted) (emphasis added).[7]

Similarly here, the Sheriff of Cherokee County is an elected official who is entrusted by state statute with responsibility for employment decisions within the Sheriff's Department. A finding that the County may be held liable for the acts or edicts of the Sheriff regarding employees in the Sheriff's Department comports with both

---

7. In *Van Ooteghem v. Gray,* the former Fifth Circuit held that the county could be liable where the county treasurer engaged in employment discrimination. Given facts similar to those in the instant action, the court stated "[The Treasurer] was an elected official equal in authority to the County Commissioner in his domain. Pursuant to [state] law, [the Treasurer] had complete authority for the hiring and firing of personnel within the Treasury. When he so acted, he acted for [the] County; when he so erred, he erred for the County." *Van Ooteghem v. Gray,* 628 F.2d 488, 495 (5th Cir.1980), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).

the opinions of courts in this circuit[8] and the Supreme Court in *Pembaur, supra.* Accordingly, the court DENIES defendant Cherokee County's motion for summary judgment.

In sum the court:

1) DENIES defendants' motions for summary judgment; and

2) DENIES defendant Cherokee County's Supplemental motion for summary judgment.

---

8. *See also Wilson v. Taylor,* 733 F.2d 1539 (11th Cir.1984); *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982).