**Vikie S. SCOTT, Plaintiff,**

v.

**Bert ESTES, individually and in his official capacity as Chief Clerk, Montgomery County Probate Court; and Montgomery County, Alabama, Defendants.**

No. Civ.A. 97–T–1074–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 4, 1999.

1262

**1264**

Cecilee R. Beasley, Stephen Andrew Strickland, Jaffe, Strickland, Beasley & Drennan, Birmingham, AL, Amy Elena Gallimore, Birmingham, AL, for Plaintiff.

John W. Adams, Jr., Tyron Carlton Means, Robert M. Weinberg, Thomas, Means, Gillis, Devlin, Robinson & Seay, PC, Mark Englehart, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Thomas T. Gallion, III, Haskel, Slaughter, Young & Gallion, Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Vikie S. Scott filed this lawsuit against defendants Bert Estes (individually and in his official capacity as Chief Clerk of the Probate Court of Montgomery County) and Montgomery County, Alabama. Scott charges the defendants with gender and disability discrimination, and rests her complaint on the following: Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e, through 2000e–17); the Americans with Disabilities Act (42 U.S.C.A. §§ 12101 through 12213), commonly referred to as the ADA; and 42 U.S.C.A. § 1983. Scott also alleges assault and battery, invasion of privacy, outrage, and negligent-and-wanton supervision and retention under the common law of the State of Alabama. The court has jurisdiction over Scott's federal claims under 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), and 42 U.S.C.A. §§ 2000e–5(f)(3) (Title VII), 12117(ADA), and supplemental jurisdiction

over her state-law claims under 28 U.S.C.A. § 1367. This lawsuit is currently before the court on three motions: (1) Estes's motion to dismiss; (2) Montgomery County's motion to dismiss; and (3) Estes's motion to stay discovery. For the reasons that follow, Estes's motion to dismiss is granted in part and denied in part; the county's motion to dismiss is granted in part and denied in part; and Estes's motion to stay discovery is denied as moot.

## I. MOTION–TO–DISMISS STANDARD

In considering a defendant's motion to dismiss under Rule 12(b)(6), the court accepts the plaintiff's allegations as true, *see* Fed.R.Civ.P. 12(b); *Andreu v. Sapp.*, 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in the plaintiff's favor. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). The lawsuit may not be dismissed unless the plaintiff can prove no set of facts supporting the relief requested. *See id.*

## II. FACTUAL SUMMARY

The facts, as alleged by Scott, are as follows: Chief Clerk Estes hired Scott to a temporary position with the Montgomery County Probate Office in September 1992.[1] Soon after, Estes told her that he would grant her a permanent position.[2] It soon became evident to Scott, however, that giving into Estes's sexual advances was a condition precedent to receiving a permanent position.[3] Scott refused Estes's sexual advances, which were both verbal and physical in nature. Scott alleges, among other things, that Estes invited her out to dinner, made comments about getting comfortable with her on the couch, grabbed her around the waist, stuck his hand into her blouse and grabbed her breasts, and grabbed her buttocks.[4] Scott did not receive a permanent position.[5]

Scott complained about Estes's unwelcome advances to another supervisor, Earnestine Harrison, but she told Scott to "handle it herself." [6] Throughout Scott's tenure with the Probate Office, Estes continued to suggest to her that he would promote her to a permanent position only if she would succumb to his sexual advances.[7] She did not succumb and was never promoted.[8]

During her employment with the Probate Office, Scott was diagnosed with multiple sclerosis.[9] While disease did not affect her ability to perform her work, it diminished her ability to lift her legs and to walk.[10] Scott, therefore, asked the defendants to cover some exposed telephone cords that were on the floor of the Probate Office and over which she had tripped.[11] Defendants refused.[12] Scott continued to trip over the exposed cords and, as a result, was eventually injured.[13] Scott also asked the defendants to provide a handicap parking space so that she could have easier access to the Probate Office, but they refused.[14] Consequently, Scott had to park on the street, and, as result, received numerous parking tickets.[15]

According to Scott, she was later "constructively discharged." [16]

Scott filed a administrative complaint against the defendants with the Equal Op-

1. *See* Complaint, filed July 11, 1997, ¶¶ 2, 6.

2. *See id.* ¶ 8.

3. *See id.* ¶ 9.

4. *See id.* ¶¶ 10–11.

5. *See id.* ¶ 9.

6. *Id.* ¶ 12.

7. *See id.* ¶ 13.

8. *See id.*

9. *See id.* ¶ 14.

10. *See id.* ¶ 15.

11. *See id.* ¶ 16.

12. *See id.*

13. *See id.*

14. *See id.* ¶ 17.

15. *See id.*

16. *See id.* ¶ 19.

portunity Employment Commission, which issued a right-to-sue letter to her on April 18, 1997.[17] Scott then filed this lawsuit on July 11, 1997, suing Estes and Montgomery County for 'quid pro quo' and 'hostile environment' sexual discrimination, disability discrimination, assault and battery, invasion of privacy, outrage, and negligent-and-wanton supervision and retention.[18] Scott seeks compensatory and punitive damages, attorney's fees, and costs.[19]

## III. DISCUSSION

### A. Federal Claims

#### 1. Title VII

▮ Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C.A. § 2000e–2(a)(1). Sexual harassment violates Title VII's prohibition of discrimination based on sex. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). There are two forms of actionable sexual harassment: 'hostile environment' and 'quid pro quo.' *See id.* In her complaint, Scott asserts claims based on both forms.

▮ "Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989) (quoting *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2405). For a hostile-environment sexual-harass-

ment claim to be valid, the work environment must be both objectively and subjectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). The conduct that creates the hostile environment must be severe or pervasive. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, ——, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998).

▮ Scott states that Estes subjected her to both verbal and physical sexual harassment in the form of propositions and the grabbing of her breasts, buttocks, and other body parts.[20] This conduct allegedly occurred on multiple occasions.[21] Because she reported Estes's conduct to Harrison [22] and shunned it,[23] Scott apparently found his conduct to be offensive, as would a reasonable person. These allegations are sufficient to state a hostile-environment sexual-harassment claim against Estes.

▮ "Quid pro quo sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands." *Steele,* 867 F.2d at 1315. Scott has alleged that as a result of rejecting Estes's sexual advances Estes did not grant her a permanent position with the Probate Office.[24] In other words, Scott's refusal to acquiesce to Estes's demands led to an alteration of her working conditions. Scott has, therefore, alleged a *quid pro quo* sexual-harassment claim against Estes.

▮ However, a plaintiff may bring a Title VII claim only against an 'employer.' [25] *See Smith v. Capitol City Club of*

---

**17.** *See id.* ¶ 5, Ex. 1.

**18.** *See id.* at 7–10.

**19.** *See id.* at 10. Notably, Scott does not seek instatement to a permanent position or other injunctive relief.

**20.** *See id.* ¶¶ 10–11.

**21.** *See id.*

**22.** *See id.* ¶ 12.

**23.** *See id.* ¶ 11.

**24.** *See id.* ¶¶ 9, 13.

**25.** Title VII defines 'employer' as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calen-

*Montgomery,* 850 F.Supp. 976, 978 (M.D.Ala.1994) (Thompson, J.); *see also Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Title VII does not provide a cause of action against an employee in his individual capacity. *See id.* Consequently, Scott's Title VII claims against Estes in his individual capacity will be dismissed.

The United States Supreme Court has recently clarified when an employer can be held liable for sexual harassment committed by a 'supervisory' employee, regardless of whether a plaintiff proceeds under the theory of hostile environment or *quid pro quo* sexual harassment. "[T]he labels *quid pro quo* and hostile work environment are not controlling for purposes of establishing employer liability." *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2271. Instead, the issue is whether the employer can be held vicariously liable for the sexual harassment committed by a supervisory employee. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages." *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2292–93. The Supreme Court described the affirmative defense as follows: "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at ——, 118 S.Ct. at 2293. Therefore, the presumption is that the supervisory employee was acting within the scope of his employment when he harassed an employee. *See Nuri*

*v. PRC, Inc.,* 13 F.Supp.2d 1296, 1307 (M.D.Ala.1998) (Thompson, J.).

■ Scott has alleged that Montgomery County is an 'employer' within Title VII's definition thereof.[26] She has also alleged that Estes was responsible for "the hiring and firing of temporary and permanent employees" in the Probate Office, and is thus a supervisory employee of the county.[27] Scott's complaint is therefore sufficient to assert a basis for holding Montgomery County liable for the alleged sexual harassed of Scott by Estes. The county may, of course, assert an affirmative defense if and where appropriate to this presumption as the litigation proceeds. However, at this early stage in the litigation, Scott's sexual harassment claim against the county may proceed.

### 2. ADA

■ The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C.A. § 12112(a). As with Title VII, a plaintiff may bring an ADA claim against an 'employer' only.[28] *See Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996). The ADA does not provide a cause of action against an employee in his individual capacity. *See id.* Scott's ADA claim against Estes in his individual capacity must be dismissed, and the remaining issue is whether Scott has a viable ADA claim against Montgomery County.

In order to state a claim under the ADA, a plaintiff must allege that she suffers from a disability, she is a qualified individual, and a 'covered entity' discriminated against her on account of her disability. *See Cramer v. State of Fla.,* 117 F.3d 1258, 1264 (11th Cir.1997). The ADA defines 'disability' as:

---

dar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b).

**26.** *See* Complaint, filed July 11, 1997, ¶ 3.

**27.** *Id.* ¶ 7.

**28.** The ADA defines 'employer' as it is defined by Title VII. *See* 42 U.S.C.A. § 12111(5).

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) a record of such an impairment; or

"(C) being regarded as having such an impairment."

42 U.S.C.A. § 12102(2). Accordingly, to fall within this definition one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C)).

Multiple sclerosis can be a disability under subsection (A). *See, e.g., Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784, 786 (8th Cir.1998); *Iacampo v. Hasbro, Inc.,* 929 F.Supp. 562, 575 (D.R.I.1996); *Riley v. Weyerhaeuser Paper Co.,* 898 F.Supp. 324, 327 (W.D.N.C.1995). However, the determination of whether an impairment is actually a disability under subsection (A) must be "an individualized inquiry." *See Sutton v. United Air Lines, Inc.,* — U.S. —, —, 119 S.Ct. 2139, —, — L.Ed.2d — (1999). "The definition of disability ... requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.'" *Id.* (quoting 42 U.S.C.A. § 12102(2)).

■ Scott has alleged that during her employment with the Probate Office she contracted multiple sclerosis, which she claims is a disability under the ADA.[29] She has also alleged that her multiple sclerosis limited her ability to walk, a 'major life activity.'[30] Scott has, therefore, alleged that she has a disability within 42 U.S.C.A. § 12102(2)(A)'s definition.

Furthermore, Scott has alleged that she is a 'qualified individual,' which is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).[31] Finally, Montgomery County, as an employer, is a covered entity,[32] which Scott claims discriminated against her, through Estes, on account of her disability by not promoting her to a permanent position and by not accommodating her disability.[33]

With these allegations, Scott's complaint states a claim under the ADA. Scott may therefore proceed with her ADA claim against the county.

### 3. § 1983

Estes and Montgomery County contend that Scott's § 1983 claims should be dismissed because they are based exclusively on violations of the ADA and Title VII, and a § 1983 claim is not cognizable under those statutes.[34]

■ Section 1983 provides a cause of action for violations of the Constitution and laws of the United States caused by persons acting under color of state law. *See* 42 U.S.C.A. § 1983. Section 1983 does not create any rights of its own, but rather

---

**29.** *See* Complaint, filed July 11, 1997, ¶ 14.

**30.** *See id.* ¶ 15. The ADA does not define 'major life activities.' However, federal regulations define 'major life activities' as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i). This definition was adopted from the Rehabilitation Act's regulations, *see* 34 C.F.R. § 104.3(j)(2)(ii), and has been applied by the Eleventh Circuit Court of Appeals to interpret the ADA. *See, e.g., Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318 n. 1 (11th Cir.1998); *Gordon v. E.L. Hamm Assoc., Inc.,* 100 F.3d 907, 911 (11th Cir.1996), *cert.*

denied, — U.S. —, 118 S.Ct. 630, 139 L.Ed.2d 610 (1997).

**31.** *See id.* ¶¶ 15, 18.

**32.** A 'covered entity' in "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C.A. § 12111(2).

**33.** *See* Complaint, filed July 11, 1997, ¶¶ 15–18.

**34.** *See* Estes's motion to dismiss, filed September 23, 1997, 10–11, 14; Montgomery County's motion to dismiss, filed September 23, 1997, ¶¶ 12, 13.

simply allows for redress of violations of other rights. *See Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Generally, plaintiffs may sue under § 1983 to remedy violations of both the United States Constitution and federal statutes. *See Maine v. Thiboutot,* 448 U.S. 1, 5, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). A plaintiff alleging a violation of a federal statute may sue under § 1983 unless the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983, or Congress has foreclosed such enforcement of the statute in the enactment itself. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 520–21, 110 S.Ct. 2510, 2523, 110 L.Ed.2d 455 (1990).

In *Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522 (11th Cir.1997), the Eleventh Circuit Court of Appeals held that "a plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." 112 F.3d at 1531. The court reasoned that, "the ADA provide[s] extensive, comprehensive remedial frameworks that address every aspect of Holbrook's claims under section 1983." *Id.* "To permit a plaintiff," the appellate court added, "to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." *Id.*

Although the Eleventh Circuit has not directly addressed the issue, the *Holbrook* court implied that its holding is equally applicable to a plaintiff's § 1983 claim based on a deprivation of rights created solely by Title VII. Specifically, the *Holbrook* court cited *Johnson v. Ballard,* 644 F.Supp. 333 (N.D.Ga.1986) (Hall, J.), in support of its holding. *See id.* In *Johnson,* the district court agreed with those

courts that had found that a plaintiff's claim under § 1983 is not actionable if based solely on violations of rights created by Title VII. *See* 644 F.Supp. at 337 (citing *Alexander v. Chicago Park Dist.,* 773 F.2d 850, 855 (7th Cir.1985); *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984)). " '[I]t would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can by-pass all of the administrative processes of Title VII and go directly into court under § 1983.' " *Id.* (quoting *Day,* 749 F.2d at 1204); *see also Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978, 982 (10th Cir.1991) (concluding that the district court properly dismissed the plaintiff's § 1983 claim which was based exclusively on a violation of Title VII); *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989) ("[Section 1983] supplies no remedy for violations of rights created by Title VII."), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *Irby v. Sullivan,* 737 F.2d 1418, 1429 (5th Cir.1984) (holding that a deprivation of a right created by Title VII cannot be the basis of a cause of action under § 1983). In *Johnson,* however, the court allowed the plaintiffs to maintain their claims under both Title VII and § 1983 because they had alleged several violations of their constitutional rights. *See* 644 F.Supp. at 337.

▪ Scott alleges that defendants violated her right to be free from sexual harassment in the workplace, and her right to be free from discrimination based on a disability in the workplace. In count six of her complaint, Scott states that "Defendants acting under color of law discriminated against [her] with respect to her job on the basis of sex, gender and disability," [35] and that these actions "violated the Constitution and also violated 42 U.S.C. Section 1983." [36] The Eleventh Circuit has determined that a plaintiff has "a constitutional right to be free from unlawful sex

---

**35.** Complaint, filed July 11, 1997, ¶ 39.

**36.** *Id.* ¶ 41.

discrimination and sexual harassment in public employment." *Cross v. State of Alabama*, 49 F.3d 1490, 1507 (11th Cir. 1995); *see also Braddy v. Florida Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802–803 (11th Cir.1998). This right is created by the equal protection clause of the fourteenth amendment to the United State Constitution. *See Cross*, 49 F.3d at 1507. Consequently, despite defendants' assertions to the contrary, Scott's right to be free from sexual harassment in public employment is not a right created solely by Title VII. In contrast, Scott's right to be free from employment discrimination based on a disability is created by statute, not the Constitution.

Scott has not specified in either her complaint or her brief that her sexual harassment claim under § 1983 is based on the equal protection clause, or any other specific constitutional provision. In fact, her only reference to the Constitution in either her complaint or her brief is in the above quoted statement. However, because count six of Scott's complaint mentions the Constitution, it is sufficient under the "liberal system of 'notice pleading' set up by the Federal Rules," *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), to state a § 1983 claim against Estes for depriving Scott of her equal protection right to be free from sexual harassment in public employment. However, because the right to be free from discrimination based on a disability is created solely by statute, Scott's claim of discrimination based on her disability is not actionable under § 1983 and must be dismissed.

■ Estes argues that even if the court finds that Scott has an actionable § 1983 claim based on sexual harassment, he is entitled to 'qualified immunity.' The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.1990). As established by the Supreme Court in *Harlow*, the test for 'good faith' or qualified immunity turns primarily on the objective reasonableness of the official's conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Where the law that the defendant allegedly violated was not clearly established at the time of the alleged offense, the defendant is entitled to qualified immunity. *See Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir.1990). "If the law was clearly established, the immunity defense ordinarily should fail since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738.

■ If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry is over, for it would follow perforce that such right was not clearly established. *See County of Sacramento v. Lewis*, 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). However, if the court determines that the plaintiff has, in fact, alleged deprivation of a constitutional right, then further inquiry is needed as to whether that right was clearly established at the time of the events in question, *id.*; and, of course, the violation of the clearly established right must be self-evident from the factual allegations set forth by the plaintiff in her complaint. *See Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).

■ In order for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what she is doing violated that right. *See Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.

1992). "This in not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id.* In determining the state of the law, this court must look to the law of the Eleventh Circuit, the Supreme Court, the courts of appeals, and the district courts. *See Leeks v. Cunningham,* 997 F.2d 1330, 1333 (11th Cir.1993), *cert. denied,* 510 U.S. 1014, 114 S.Ct. 609, 126 L.Ed.2d 573 (1993); *Greason,* 891 F.2d at 833. Therefore, for Scott to defeat Estes's request for dismissal on qualified immunity grounds, she must show that the right she is claiming was "clear, factually-defined, [and] well-recognized" at the time of Estes's conduct. *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989).

■ Scott's complaint alleges that Estes violated her constitutional right to be free from sexual harassment in public employment. As stated, a plaintiff has "a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." *Cross,* 49 F.3d at 1507. Scott has, therefore, alleged the deprivation of a constitutional right. The next issue is whether that right was clearly established at the time that Estes allegedly sexually harassed Scott.

In her complaint, Scott alleges that Estes's conduct toward her began soon after she started working in the Probate Office in September 1992,[37] and continued through, or at least reoccurred on, October 18, 1995.[38] In *Cross,* which was decided on April 6, 1995, over six months before the last date that Estes allegedly sexually harassed Scott, the Eleventh Circuit held that a supervisor was not entitled to qualified immunity for actions taken in the late 1980's and the early 1990's because he should have known that as of then the law was clearly established that sexual harassment was illegal. The court wrote: "We conclude that a reasonable person in [the supervisor's] position could not have believed doing nothing in light of [the subordinate's] conduct[, which occurred during and before 1991,] was lawful, in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights." *Id.* at 1503. It follows then that an employee's statutory right to be free from sexual harassment in the workplace was also clearly established in late 1992, the earliest date that Scott has alleged that Estes sexually harassed her.

Having determined that Scott's constitutional right to be free from sexual harassment was clearly established, the court will next consider whether the alleged violation is self-evident on the face of Scott's complaint. *See Rich,* 841 F.2d at 1564. The Eleventh Circuit imposes a "heightened pleading requirement" on a plaintiff when confronted with a motion to dismiss on the basis of qualified immunity. *See GJR Inv., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998). The heightened standard requires a complaint to provide "some factual detail ... especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

In *Helton v. Hawkins,* 12 F.Supp.2d 1276, 1280–81 (M.D.Ala.1998) (Thompson, J.), this court expressed doubt that the heightened pleading standard is constitutional in light of the Supreme Court's decision in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Nonetheless, even under the heightened pleading requirement, Scott's complaint is sufficient to preclude shielding Estes with qualified immunity. Scott's complaint states that Estes conditioned her receipt of a promotion on her giving into his sexual advances; the complaint

---

**37.** *See Id.* ¶¶ 6, 8.

**38.** *See id.* ¶ 11.

provides examples of Estes alleged verbal sexual harassment of Scott; and the complaint gives details of Estes's alleged sexual assault of her in October 1995.[39]

Because Scott has alleged that Estes deprived her of a constitutional right, because the right was clearly established during the period in which Estes allegedly deprived her of that right, and because she has set forth with specificity facts to support that Estes deprived her of that right, Estes is not entitled to qualified immunity. Scott may, therefore, proceed against Estes in his individual capacity with her sexual harassment claim under § 1983.

■ The court also rejects Estes and Montgomery County's argument that Estes is a state employee entitled in his official capacity to immunity under the eleventh amendment to the United States Constitution.[40] Admittedly, while neither the 1901 Alabama Constitution nor the 1975 Alabama Code expressly lists the officers of the State's judicial division, the Alabama Constitution vests the judicial power of the State in a "unified judicial system," which includes a probate court. 1901 Ala. Const. amend. 328, § 6.01(a).[41]

A probate judge is, therefore, a member of the State's unified judicial system.

The Alabama Constitution, however, designates the Montgomery County Judge of Probate as a "county officer" and requires the county to pay his salary. 1901 Ala. Const. amend. 4[42] In addition, state law provides that, unless otherwise provided by local law, the county probate judge shall be a member of the county commission and shall serve as its chair. *See* 1975 Ala.Code § 11–3–1.[43] And other provisions of the Alabama Constitution and the 1975 Alabama Code indicate that probate judges are not state officers, at least for purposes related to their compensation. *See, e.g.,* 1901 Ala. Const. art. VI, § 150 (excepting probate judges from among those judges whose compensation may not be diminished during their terms in office); 1901 Ala. Const. amend. 328, § 6.09(a) ("A state judicial compensation commission is hereby created which shall recommend the salary and expense allowances to be paid from the state treasury for all the judges of this state except for judges of the probate court."); 1975 Ala.Code § 12–10–4 (excepting only probate judges and municipal judges from the judiciary for purposes

---

**39.** *See id.* ¶¶ 9–11, 13.

**40.** *See* Estes's motion to dismiss, filed September 23, 1997, at 3–4; Montgomery County's motion to dismiss, filed September 23, 1997, ¶¶ 5–7.

**41.** The Alabama Constitution provides:
"Except as otherwise provided by this Constitution, the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdiction known as the circuit court, a trial court of limited jurisdiction known as the district court, a probate court and such municipal courts as may be provided by law."
1901 Ala. Const. amend. 328, § 6.01(a).

**42.** The Alabama Constitution provides:
"Commencing at the beginning of their next term of office ... the compensation and allowance of the following named *county officers* of Montgomery county shall be as

follows: Salary of *judge of probate of Montgomery county,* $5,000.00 per year net.... These amounts to be paid out of the county treasury of Montgomery county.... The legislature of Alabama may hereafter from time to time by local or general laws, fix, regulate and alter the amount of the above named salaries...."
1901 Ala. Const. amend. 4 (emphasis added).

**43.** Section 11–3–1 provides in part:
"(a) Unless otherwise provided by local law and as otherwise provided in subsection (b), there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and hold office for four years until their successors are elected and qualified."
To be sure, the Montgomery County Probate Judge is not a member of the county commission. But the import of § 11–3–1 is that the State generally views probate judges to be part of county governance.

of the Judicial Compensation Commission's recommending to the legislature the salary and expense allowances to be paid to judges from the state treasury); 1975 Ala. Code § 12–1–15(a) (excepting probate judges and municipal judges, but not other judges, from receiving benefits received by state employees). And, finally, both state and federal courts have held or indicated that Alabama probate judges are county, and not state, officials. *See, e.g., Johnson v. Waters*, 970 F.Supp. 991, 1001–02 (M.D.Ala.1997) (Carroll, M.J.); *Hawkins v. Jefferson County*, 233 Ala. 49, 169 So. 720, 722 (1936). Therefore, for these reasons, the court finds that the Montgomery County Judge of Probate is a county, not a state, official.

Because the Montgomery County Judge of Probate is a county official it logically follows that the chief clerk of the Montgomery County Probate Court, a subordinate of the probate judge, is also a county, and not a state, official.[44] And because the eleventh amendment applies only to suits against States and state officials, the amendment is not an issue in this matter. *See Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994) ("[C]ites and counties do not enjoy Eleventh Amendment immunity."); *Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 638 (11th Cir.1992) (stating that the eleventh amendment does not apply to counties and other political subdivisions of the state), *cert. denied*, 506 U.S. 1022, 113 S.Ct. 660, 121 L.Ed.2d 586 (1992).

■ A local government, like Montgomery County, however, may not be held vicariously liable under § 1983 for an employee's conduct. *See Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Instead, the local government "may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which

[it] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir.1998) (en banc) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986)), *cert. denied*, —— U.S. ——, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). To determine whether Montgomery County caused the alleged injury the court "must 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Id.* (quoting *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 783, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997)).

■ Two factors guide the court's analysis of which governmental actors speak with final authority. First, there must be a finding of the particular area over which the government official is alleged to have authority to make final policy. *See id.* Second, there must a finding of the 'actual function' of that official as dictated by state law—specifically, state and local positive law, as well as custom and usage. *See id.* at 1287–88. The county may thus be liable for Estes's decision not to hire Scott for a permanent position if Estes was delegated the final policymaking authority for hiring clerks in the Probate Office.

■ In her complaint, Scott alleges that "[a]s the Chief Clerk, Defendant Estes was responsible for the day-to-day management of the office including the hiring and firing of temporary and permanent employees."[45] Scott has, therefore, alleged that Estes was responsible for deciding whether she would be hired permanently from her temporary position. Furthermore, implicit in Scott's allegation is that, by custom and usage if not by positive law, Estes's 'actual function' included the hiring and firing of employees for the Probate Office. Of course, whether this is,

---

44. Furthermore, the Alabama Constitution provides that the clerks of the probate court of Montgomery County are, like the probate judge, officers of the county and are to be

paid out of the county treasury. *See* 1901 Ala. Const. amend 4.

45. Complaint, filed July 11, 1997, ¶ 7.

in fact, by custom and usage one of Estes's actual functions will not be discernable until discovery. For now, however, reading Scott's complaint liberally, as the court must at this stage of the litigation, *see Duke v. Cleland*, 5 F.3d at 1402, the court concludes that Scott's allegations state a § 1983 claim against the county.

### 4. Punitive Damages

Montgomery County contends that it is not subject to punitive damages under Title VII, the ADA, or § 1983.[46] The county, therefore, seeks to have dismissed Scott's prayer for punitive damages against it under those statutes.[47]

 Governmental entities are expressly exempt from punitive damages under Title VII and the ADA. *See* 42 U.S.C.A. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . ."). Section 1983 does not expressly immunize governmental entities from punitive damages. However, the United States Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), and the reasoning behind this holding requires that the holding be extended to counties as well. *See Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir.1995); *Sims v. Montgomery County Com'n*, 873 F.Supp. 585, 609 (M.D.Ala. 1994) (Thompson, J.). Montgomery County therefore cannot be held liable for punitive damages under Title VII, the ADA, or § 1983. Scott's prayer for punitive damages against the county under these statutes must be dismissed.

### D. State–Law Claims

#### 1. Assault and Battery

 The Alabama Supreme Court has defined 'assault' as " '[A]n intentional, un-

lawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.' " *Wright v. Wright*, 654 So.2d 542, 544 (Ala. 1995) (quoting *Allen v. Walker*, 569 So.2d 350, 351 (Ala.1990)). A battery occurs when a person actually touches another in a hostile manner. *See Kmart Corp. v. Perdue*, 708 So.2d 106, 110 (Ala.1997). By alleging, among other things, that Estes grabbed her breasts and buttocks, Scott has stated an assault-and-battery claim against Estes.

 In order for an employer—here, Montgomery County—to be liable for the intentional torts of its employee the plaintiff must show that (1) the employee's wrongful acts were committed in the line and scope of the his employment; (2) the acts were committed in furtherance of the business of the employer; or (3) the employer participated in, authorized, or ratified the wrongful acts. *See Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.1995); *Potts v. BE&K Constr. Co.*, 604 So.2d 398, 400 (Ala.1992). The Alabama Supreme Court has explained:

> "The employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or for acts done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action."

*Potts v. BE&K Const. Co.*, 604 So.2d 398, 400 (Ala.1992). In addition, if a plaintiff seeks to hold the employer liable under a theory of ratification, she must show that the employer: (1) had actual knowledge of the tortious conduct of the offending em-

---

**46.** *See* Montgomery County's motion to dismiss, filed on September 23, 1997, ¶ 9.

**47.** *See id.*

ployee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation. *Id.*

Assault and battery is an intentional tort. Scott has alleged that "[t]he acts of Defendant Estes were in the course and scope of his employment, or were in furtherance of the business of Montgomery County and/or Montgomery County participated in, authorized, or ratified the acts of this employee."[48] This allegation, coupled with the allegations that state an assault-and battery-claim against Estes, is sufficient to state an assault-and-battery claim against the county.

### 2. Invasion of Privacy

Under Alabama law, invasion of privacy involves one of four acts: (1) intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use. *See Phillips v. Smalley Maintenance Serv., Inc.,* 435 So.2d 705, 708 (Ala.1983); *Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1522 (M.D.Ala.1996). Scott has not identified upon which of the four theories she is basing her claim. However, based on the facts alleged, the only theory that could arguably be applicable here is the first one, intrusion upon the plaintiff's physical solitude or seclusion. Under this theory, invasion of privacy consists of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW–FM Corp.,* 495 So.2d 649, 651 (Ala.1986). It is not necessary that information about the victim's private concerns be communicated to

a third party or that the wrongdoer invade the victim's physical privacy. *See Phillips,* 435 So.2d at 709.

The allegations in Scott's complaint satisfy this definition of invasion of privacy. Scott has alleged that Estes repeatedly conditioned her receipt of a promotion on giving into his sexual advances and that Estes sexually assaulted her. Consequently, Scott has stated an invasion-of-privacy claim against Estes. Because invasion of privacy is an intentional tort, Scott has stated an invasion-of-privacy claim against Montgomery County for the same reason that she has stated an assault-and-battery claim against the county.

### 3. Outrage

The elements of the tort of outrage are: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *See Harris v. McDavid,* 553 So.2d 567, 569–70 (Ala.1989). To satisfy the conduct element, the plaintiff must demonstrate that the conduct is " 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' " *Id.* at 570 (quoting *American Road Serv. Co. v. Inmon,* 394 So.2d 361, 365 (Ala.1981)). The Alabama Supreme Court has recently determined that "[e]gregious sexual harassment can amount to the tort of outrage." *Henry v. Georgia–Pacific Corp.,* 730 So.2d 119, 121 (Ala.1998).

Scott has pleaded facts that, if substantiated, constitute the tort of outrage by Estes. The conduct element is satisfied by Scott's allegations that Estes conditioned Scott's promotion on her giving into his sexual advances and that he

---

**48.** Complaint, filed July 11, 1997, ¶ 20.

grabbed her breasts and buttocks. Scott has also alleged that Estes's conduct caused her great physical and emotional distress. Furthermore, Estes should have known that his alleged conduct would, by its nature, have caused Scott to suffer emotional distress.

Outrage, like assault and battery and invasion of privacy, is an intentional tort. Therefore, Scott has stated an outrage claim against Montgomery County for the same reason that she has stated an assault-and-battery and an invasion-of-privacy claim against the county.

### 4. Negligent–and–Wanton Supervision and Retention

Finally, Scott alleges a claim of negligent-and-wanton supervision and retention against Estes and Montgomery County.[49] The Alabama Supreme Court, in laying out the elements of negligent-and-wanton supervision and retention, has said:

> "In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge."

*Lane v. Central Bank of Ala., N.A.,* 425 So.2d 1098, 1100 (Ala.1983) (internal quotations omitted).

Scott claims that "Defendants were negligent and/or wanton in supervising, training, and/or retaining its tortious employees in that the Defendants knew, or should have known, that said employee, Bert Estes, was engaging in sexual harassment against the Plaintiff."[50] The court finds that, by so alleging, Scott has stated a claim for negligent-and-wanton supervision and retention against Montgomery County.

The court, however, cannot reach the same conclusion as to Estes. Scott has not alleged that she was injured by any individual other than Estes, or, more particularly, anyone under Estes's supervision.

Accordingly, for the above reasons, it is ORDERED that:

(1) The motion to dismiss filed by defendant Bert Estes on September 23, 1997, is granted as follows:

(a) Plaintiff Vikie S. Scott's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, are dismissed as to defendant Estes in his individual capacity.

(b) Plaintiff Scott's claim under the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 through 12213, commonly referred to as the ADA, is dismissed as to defendant Estes in his individual capacity.

(c) Plaintiff Scott's claims under 42 U.S.C.A. § 1983 to the extent Scott claims disability discrimination. (d) Plaintiff Scott's state-law negligent-and-wanton supervision and retention claim is dismissed as to defendant Estes in his individual capacity.

(2) The motion to dismiss filed by defendant Estes on September 23, 1997, is denied as to the following claims:

(a) Plaintiff Scott's claims under 42 U.S.C.A. § 1983 to the extent she asserts sexual harassment and discrimination claims against defendant Estes in both his official and individual capacities.

(b) Plaintiff Scott's state-law assault-and-battery, invasion-of-privacy, and outrage claims to the extent that defendant Estes is sued in both his official and individual capacities.

(c) Plaintiff Scott's state-law negligent-and-wanton supervision and retention claim to the extent that defendant Estes is sued in his official capacity.

---

**49.** *Id.* ¶ 44.

**50.** *Id.*

It is further ORDERED that the motion to dismiss filed by defendant Montgomery County, Alabama on September 23, 1997, is granted to the extent that plaintiff Scott's prayer for punitive damages on his claims under Title VII, the ADA, and § 1983 and her disability claim under § 1983 are dismissed and the motion is denied in all other respects.

It is further ORDERED that the motion to stay discovery filed by defendant Bert Estes, on September 30, 1997, is denied as moot.

The clerk of the court is DIRECTED to provide a copy of this order to counsel for all parties by facsimile transmittal.